## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MIRELA USELMANN,**
**D/B/A SAPPHIRE TRUCKING, INC.,**                  Case No.
**GABRIEL BICLEA,**
**D/B/A MB TRUCKING, INC.,**                        Hon.
**ION GUTU, D/B/A GPA TRUCKING, INC., and**
**DUMITRU MARIUS RENDENCIUC,**
**D/B/A DMR EXPRESS, INC**.
                            Plaintiffs,

vs.

**RAZVAN POP, MARIA POP,**
**R.S.P. EXPRESS, INC.,**
**NA TRUCK REPAIR, LLC**
**and JOHN DOE CORPORATION ONE**
**and JOHN DOE CORPORATION TWO**,
                            Defendants.
_____

Bruce A. Miller (P17746)
Keith D. Flynn (P74192)
MILLER COHEN, PLC.
7700 Second Ave., Ste. 335
Detroit, MI  48202
(313)964-4454
(313)964-4490 facsimile
brucemiller@milercohen.com
kflynn@millercohen.com

_____

## CLASS ACTION COMPLAINT
## AND JURY DEMAND

There is no other pending or resolved civil action arising out of the transactions or occurrences alleged in this Compliant.

1

**NOW COME PLAINTIFFS**, **MIRELA USELMANN**, doing business as **SAPPHIRE TRUCKING, INC.**, **GABRIEL BICLEA**, doing business as **MB TRUCKING, INC.**, **ION GUTU**, doing business as **GPA TRUCKING INC.**, and **DUMITRU MARIUS RENDENCIUC**, doing business as **DMR EXPRESS, INC.**, on behalf of themselves and all similarly situated persons, known or unknown, by and through their attorneys, **MILLER COHEN, P.L.C.**, and for their Complaint against Defendants, **RAZVAN POP**, **MARIA POP**, **R.S.P. EXPRESS, INC.**, and **NA TRUCK REPAIR, LLC** state as follows:

## INTRODUCTION

1.    These claims are brought by plaintiffs as representatives of a class of truck owner drivers employed by Defendants allegedly as independent contractors. They seek relief in connection with a scheme devised by Defendants to defraud Plaintiffs and to procure secret profits from Plaintiffs.  Defendants achieved this by failing to fully disclose interests in transactions with Plaintiffs.  The relief sought includes actual, punitive and treble damages resulting from the scheme to defraud, an accounting, the imposition constructive trusts with tracing, the imposition and execution of equitable liens, divesture, costs of investigation and suit, interest and attorney fees, and injunctive relief.

2

The Defendants operate a trucking company and a repair facility and other business entities whose specific identification is unknown to plaintiffs and for which discovery is necessary.   The Plaintiffs are owner drivers for Defendants.   The Defendants secured contracts from third parties for the trucking of freight.   The third party deals only with the Defendants and pays the Defendants for the service of having the freight delivered by Plaintiff truckers.   There is a contract between the Plaintiffs and the Defendants, copies of which are in the possession of Defendants, whereby the Plaintiffs receive 80% of the amount paid by the third party and the Defendants receive twenty per cent of that amount. An example of the contract is attached as *Exhibit A*.

Upon information and belief, the Defendants never disclosed the actual amount paid to Defendants by third parties.   Plaintiffs have been informed and do believe that Defendants actually received more from the third parties than they disclose to the Plaintiffs and wrongly kept that money for themselves.   Plaintiffs receive notices in the mail from the Defendants from time to time purporting to show the contract amount allegedly paid by the third party and the 80/20 split provided for under the contracts between Plaintiffs and Defendants.   This has been going on since 2006.   Sometime since 2015 and every year thereafter, the Defendant Corporations changed the contracts to provide for payment for services, thus, ceasing the prior fraudulent arrangement.   They did this after one of the drivers raised their individual

3

concerns over the difference between what had actually been paid by the third parties and the fraudulent amounts that the Defendants had asserted had been paid.

The members of this class are approximately 145 truck drivers according to US DOT Number 1582249.   The use of the mail involves a mailing for each trip period and loads carried by each driver each time over this extended period of time. The mailings are in the thousands to multiple individuals who are class members.

The Defendants have operated their businesses in a pattern of racketeering that includes that which has been alleged and more.  Defendants established NA Truck Repair ("NA") during 2015 on its premises as a repair facility for its own truck drivers, its own trucks, and for the repair of third parties' trucks.  It is an unlicensed repair facility. Defendants secretly contract with third party truck owners to tamper with emissions controls which, when removed, increase fuel efficiency and cut the costs of operation.  The emission control equipment is removed from the truck and shipped to a Florida company that alters the control equipment which is then returned and reinstalled in its altered and illegal state.   The Defendants performed this operation on its company owned trucks of which there are in excess of twenty.  This conduct violated MCL 324.6319 – Tampering with motor vehicle— and interferes with Plaintiffs' ability to compete against trucks that have been unlawfully tampered with.

4

The use of the mail to transmit the fraudulent documents constituted mail fraud in violation of 18 U.S.C. sec. 1341.  Furthermore, and in the alternate, it constitutes conversion, a breach of the parties' agreement, unjust enrichment, promissory estoppel, and fraudulent concealment.  Now, Plaintiffs have filed this lawsuit seeking a full remedy for the Defendants' illegal conduct.

## JURISDICTION

2.      The amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. sec. 1332

3.      A substantial part of this litigation arises under the laws of the United States of America.  28 U.S.C sections 1331 and 1337

4.      The Defendants have their principal places of business at 28169 Van Born Road, Romulus, Wayne County, Michigan.  28 U.S.C. section 1391(a) (3).

## PARTIES

5.      Plaintiff Mirela Uselmann, doing business as Sapphire Trucking, Inc., has been the owner of a truck under contract with the Defendant Corporations where her place of business is located.

6.      Plaintiff Gabriel Biclea, doing business as MB Trucking, Inc., has been the owner of a truck under contract with the Defendant Corporations where his place of business is located.

5

7.     Plaintiff Ion Gutu, doing business as GPA Trucking, Inc., is the owner of a truck under contract to Defendants where his place of business is located.

8.     Plaintiff Dumitru Marius Redenciuc, doing business as DMR Express, Inc., is the owner of a truck under contract to Defendants where his place of business was located.  He is now a resident of Romania.

9.     Defendant R. S. P. Express ("RSP") is a corporation incorporated under the laws of the State of Michigan and is purportedly owned by Maria Pop.

10.     Defendant Razvan Pop has acted as the person in control of RSP although the Articles of Incorporation do not give him any formal ownership or authority. Defendant corporations are held out to the public as family owned.  He is held out to the public as the person in charge. He was married to Defendant Maria Pop and, on information and belief, they entered into a property settlement agreement which bears on their real interests in RSP.

11.     Defendant Maria Pop is the former spouse of Razvan Pop and is listed in the Articles of Incorporation as in control of RSP.  The facts are otherwise as alleged in paragraph 9.  The corporate structure has Defendant Maria Pop as sole officer and owner but in fact Defendant Razvan Pop has a capital interest in the corporations in a manner and form to be discovered.

12.     Defendant NA Truck Repair LLC ("NA") was established by Defendants Pop to repair trucks and to tamper with emission control devices.

6

13.   On information and belief, there are other corporate entities that have been created by Defendants Pop which engage in the racketeering schemes alleged herein.  The identity of them will be established through discovery.

## FACTUAL ALLEGATIONS

14.   Since 2006 the Defendants Pop and RSP have engaged in a pattern of racketeering, one aspect of which, ended between 2015 to date.

15.   They employed truck drivers ostensibly as independent contractors.

16.   Defendants required the truck owner drivers to agree to a contract, an example of which is attached as *Exhibit A*, whereby the amount charged to third party customers for trucking services would be split 80/20 per cent with the 80 going to the truck driver.

17.   After each trip the employer would send through the United States mail a statement purporting to show the amount paid by the third party and accounting for the 80/20 split. (*Exhibit B* is an example of the Statement)

18.   Upon information and belief, the statement was fraudulent in that it did not disclose the actual amount paid by the third party which was always in excess of the amount accounted for in the statement.  The Defendants Pop would keep that money for their own account.

7

19.     This fraudulent conduct was repeated for each trip for each truck driver over a period of almost 10 years from 2006 to 2015.  The number of mail transaction during this period of time could exceed 400,000 separate events.

20.     After being called to account and paying settlement amounts to one driver, the Defendants changed their method of dealing with the truck drivers.

21.     They required a new contract which based compensation on a fixed amount for services rendered and eliminated the 80/20 formula.

22.     Defendants not only fraudulently concealed this deception from the Plaintiffs by misrepresenting the amount paid, but also lied about this settlement and affirmatively indicated that they won while also covering up the nature of the case.

24.     In furtherance of operating RSP and NA as a criminal enterprise, NA was organized as an extension of RSP and has been in existence for approximately four years.  It has not been possible to find Articles of Incorporation on the Michigan Department of Licensing and Regulatory Affairs.

25.     Upon information and belief, NA is the alter ego of RSP.

26.      Its mechanics are not licensed as required by state law and the facility itself is not licensed as an auto repair facility MCL 257.1311.  Violations of the statute are a crime.  MCL 257.1338.

27.   NA solicited business from third party truckers who wanted their emission systems tampered with and disabled in order to increase their fuel efficiency and save money.

28.   NA would remove the emissions control equipment and send it to a company in Florida who would made the changes on the equipment and return it.

29.   NA would then reinstall it.

30.   On information and belief, no records were kept of these transactions and payment was in cash.

31.   Tampering with emission control equipment on a motor vehicle is illegal, MCL 324.6535 and a crime, MCL 324.6537(2).

32.   The tampering has made it more difficult for Plaintiffs to compete with the other truck drivers whose vehicles have been illegally modified.

33.   In connection with the activities giving rise to this claim for relief, each of the Defendants acted with malice, intent, knowledge, and with a wanton and reckless disregard of the rights of the plaintiffs.

34.   At all relevant times the Defendants were engaged in interstate and foreign commerce in that the trucking activities encompassed virtually all the states of the United States and Mexico and Canada.

35.   At all relevant times and in furtherance of and for the purpose of executing the scheme and artifices to defraud and to obtain money by means of false

9

pretenses, Defendants, on numerous occasions, used and caused to be used mail depositories of the United States Postal Service by both placing and causing to be placed invoices and other mailable matter in the depositories and by removing and causing to be removed invoices and other mailable matter from the depositories, each such use of the mails in connection with the schemes and artifices to defraud and to obtain money by means of false pretenses constituting a separate and distinct violation of 18 USC 1341.

36.     At all relevant times and in furtherance of a scheme to destroy pollution control devices in violation of State and Federal law, Defendants tampered with the devices, thus, providing third party truckers with a competitive advantage.

## CLASS ACTION ALLEGATIONS.

37.     Plaintiffs incorporate paragraphs one through 36 as though they had been pled herein.

## CLASS REPRESENTATION

38.     This action is brought by Plaintiffs on their own behalf and except as to Rendenciuc, on behalf of all other truck driver owners denominated as independent contractors by Defendants whose joinder in this action is impracticable because the class consists of about 145 individuals.  The class is all truck drivers' owners driving their own rigs during the past nine years.

10

39.    There are questions of law or fact common to the members of the class that predominate over questions of law or fact affecting only individual class members.  The question of law or fact is common to all members of the class as they were all signatories individually to the same contract and were all defrauded by the same artifice and design the difference between them being only the ministerial task of arithmetically calculating the amount of damages individually\; and they were all equally disadvantaged by the operation of an illegal repair facility as alleged.

40.    The claims of the named Plaintiffs are for the entire class, involve the same fraud which is objectively determined, and are therefore typical of the claims of the class; as to the illegal repair facility by injunctive relief.

41.    Plaintiffs, or some of them, are similarly situated residents and there is no reason to doubt that they will fairly and adequately protect the interests of the class.  The maintenance of this action as a class action is superior to other available methods of adjudication.

## COUNT I

## CIVIL RICO, 18 USC § 1964(c)

42.    Plaintiffs incorporate paragraphs one through 41 as though they had been pled herein.

43.    All the named plaintiffs are "persons" within the meaning of 18 USC 1961(3) and 1962 (c) and (d).

11

44.    The Defendants constitute collectively an "enterprise" within the meaning of 18 USC 1961(4) and 1962 (c) and (d).

45.    The named Defendants were each employed by or associated with an enterprise engaged in, and the activities of which affected interstate and foreign commerce with the meaning of 18 USC 1962 (c) and (d).

46.    With respect to the individual named defendants each of them conspired to, with the meaning of 18 USC 1962 (d) and did conduct or participate, directly or indirectly, in the conduct of Defendant RSP affairs in a fashion prohibited by 18 USC 1962 through a pattern of activity defined by 18 U.S.C. 1961(1) (B) and (5) by multiple instances of mail fraud in violation of 18 USC 1962 (c); and thought the operation of an illegal repair facility.

47.    In engaging in the secret arrangements whereby the Defendant's kept from plaintiffs the true amounts of the transactions which they had a duty to disclose and actively concealed which Defendant's had sole knowledge and/or access to material facts and knew that these facts were not known to or reasonably discoverable by Plaintiffs.

48.    Defendants breached their duties by suppressing material facts, including the facts that they were paid more for the service than the amount disclosed to the plaintiffs and intentionally and knowingly concealed these facts with the intent to induce plaintiffs to provide trucking services.

49.    In doing these acts alleged, Defendants acted with oppression, fraud and malice and subjected plaintiffs to cruel and unjust hardship in conscious disregard of the plaintiffs' rights.

50.    As a proximate result of Defendants' fraudulent concealments and omissions of material facts Plaintiffs have been damaged in excess of $75,000.

## PRAYER FOR RELIEF

51.    Plaintiffs pray that judgement be entered against defendants and in favor of plaintiffs as follows:

A.   For damages against Defendants, and each of them, jointly and severally, in an as yet undetermined amount in excess of $75,000, the amount duly trebled in accordance with 18 USC 1964(c);

B.   For punitive damages, in an amount to be determined at trial, against Defendants, and each of them, jointly and severally;

C.   For the costs of investigation and litigation reasonably incurred, as well as attorney fees in accordance with 18 USC 1964(c);

D.   An accounting of all benefits, consideration and profits received and/or paid, directly or indirectly, including, but not limited to, the imposition of constructive trusts with tracing;

E.   The imposition and execution of equitable liens;

13

F.   Orders of divestiture of any interest, including real or personal property, money, or obligations or otherwise, wrongfully obtained through the proceeds of any funds acquired in the exercise of fraudulent conduct; and

G.   For such other damages, relief and pre-judgment interest as the court may deem just and proper to award plaintiff's complete relief.

<u>**COUNT II**</u>

<u>**CIVIL RICO, 18 USC §1964©**</u>

52.   Plaintiffs incorporate paragraphs one through 51 as though they had been pled herein.

53.   The *Natural Resources and Environmental Protection Act, Part 65,* provides, among other things, for the regulation of emissions from Trucks.  Pursuant to the Act trucks are required to have emission controls and under MCL 6535, it is a violation of the law to tamper with these devices.  Violation of the anti-tampering provision is a crime, MCL 324.6537(2).

54.   Defendants established Defendant NA Truck Repair ("NA") about 4 years ago on its premises as a repair facility for its truck drivers, its own trucks and for the repair of third parties' trucks.  Defendant's contract with third party truck owners to tamper with emissions controls which, when removed, increase fuel efficiency and cut the costs of operation.  The emission control equipment removed from the truck was shipped to a Florida company that altered the control which was

14

returned and reinstalled in its altered and illegal state.   The Defendants also performed this operation on its company owned trucks of which there are in excess of twenty.

55.     The purpose of the statute is to protect the environment for the benefit of the people in general.

56.     Plaintiffs and class members are peculiarly impacted by Defendants' violation of this law.   Truckers who operate without emission control devices save substantial money in the operation of their vehicles which gives them a competitive advantage over those who abide by the law.   This competitive advantage injures plaintiffs in their business. *Lansing Schools Education Association v Lansing Board of Education*, 387 Mich 349 (2010).

## PRAYER FOR RELIEF

57.     Plaintiffs pray that a judgement of injunction be issued by the court restraining the Defendants from engaging in the illegal practice of tampering with emissions devices and:

a. Require an accounting of all monies earned through this illegal practice;

b. order that such funds be escheated and disgorged and to the state to be used in the administration of the Act; and

15

c. and that the court will provide other relief that meets equity and good conscience, including the provision of attorney fees.

## COUNT III

## BREACH OF CONTRACT

58.     Plaintiffs incorporate paragraphs one through 57 as though they had been pled herein.

59.     Under their contracts with Defendants, Plaintiffs were to receive 80% of the amount paid by the third parties to Defendants for the trucking of freight.

60.     An example of the contract is attached as ***Exhibit A***.

61.     Upon information and belief, the Defendants misrepresented the amount paid by the third parties and, instead, only disclosed a false amount.

62.     Defendants then kept the difference for themselves and fraudulently concealed the breach.

63.     In doing so, the Defendants breached the parties' agreements.

64.     By this conduct Plaintiffs have been injured in excess of $75,000.

## PRAYER FOR RELIEF

65.     Plaintiffs pray that judgement be entered against Defendants and in favor of Plaintiffs as follows:

A.   For damages against Defendants, and each of them, jointly and severally, in an as yet undetermined amount in excess of $75,000;

16

B.  An accounting of all benefits, consideration and profits received and/or paid, directly or indirectly, including, but not limited to, the imposition of constructive trusts with tracing;

C.  The imposition and execution of equitable liens and all other injunctive relief;

D.  Orders of divestiture of any interest, including real or personal property, money, or obligations or otherwise, wrongfully obtained through the proceeds of any funds acquired in the exercise of fraudulent conduct; and

E.  For such other damages, relief and pre-judgment interest as the court may deem just and proper to award plaintiff's complete relief.

## COUNT IV

## UNJUST ENRICHMENT/QUANTUM MERUIT

66.   Plaintiffs incorporate paragraphs one through 65 as though they had been pled herein.

67.   Plaintiffs performed labor and services for Defendants in good faith and with a reasonable expectation that they would receive full payment for their work.

68.   Defendants received the benefits of Plaintiffs' labor and services but failed to pay Plaintiffs for the fair and reasonable value of those services by failing to pay Plaintiffs 80% of the actual amount by third parties.

17

69.     Defendants fraudulently concealed the amount that they had been paid by the third parties and disclosed a false amount pocketing the difference.

70.     By this conduct Plaintiffs have been injured in excess of $75,000.

## PRAYER FOR RELIEF

71.     Plaintiffs pray that judgement be entered against Defendants and in favor of Plaintiffs as follows:

A.   For damages against Defendants, and each of them, jointly and severally, in an as yet undetermined amount in excess of $75,000;

B.   An accounting of all benefits, consideration and profits received and/or paid, directly or indirectly, including, but not limited to, the imposition of constructive trusts with tracing;

C.   The imposition and execution of equitable liens and all other injunctive relief;

D.   Orders of divestiture of any interest, including real or personal property, money, or obligations or otherwise, wrongfully obtained through the proceeds of any funds acquired in the exercise of fraudulent conduct; and

E.   For such other damages, relief and pre-judgment interest as the court may deem just and proper to award plaintiff's complete relief.

## COUNT V

## PROMISSORY ESTOPPEL

18

72.     Plaintiffs incorporate paragraphs one through 71 as though they had been pled herein.

73.     Defendants' promise to compensate Plaintiffs with 80% of the amount paid by third parties was clear and definite.

74.     Defendants knew or should have known that his promise of compensation would induce Plaintiffs to provide labor and services.

75.     Defendants' promise of compensation did in fact induce Plaintiffs to perform work for Defendants.

76.     Plaintiffs were financially damaged by Defendants' failure to compensate them as promised.

77.     Defendants fraudulently concealed the amount that they had been paid by the third parties.

78.     By this conduct Plaintiffs have been injured in excess of $75,000.

## **PRAYER FOR RELIEF**

79.     Plaintiffs pray that judgement be entered against Defendants and in favor of Plaintiffs as follows:

A.  For damages against Defendants, and each of them, jointly and severally, in an as yet undetermined amount in excess of $75,000;

B.   An accounting of all benefits, consideration and profits received and/or paid, directly or indirectly, including, but not limited to, the imposition of constructive trusts with tracing;

C.   The imposition and execution of equitable liens and all other injunctive relief;

D.   Orders of divestiture of any interest, including real or personal property, money, or obligations or otherwise, wrongfully obtained through the proceeds of any funds acquired in the exercise of fraudulent conduct; and

E.   For such other damages, relief and pre-judgment interest as the court may deem just and proper to award plaintiff's complete relief.

## COUNT VI

## CONVERSION

80.   Plaintiffs incorporate paragraphs one through 79 as though they had been pled herein.

81.   Plaintiffs performed labor and services for Defendants in good faith and with a reasonable expectation that they would receive full payment for their work.

82.   Instead, Defendants converted a portion of this property to their own use.

83.   Plaintiffs asked for the return of their property.

84.   Defendants failed to return this property.

85.    Plaintiffs are entitled to three times the actual damages sustained, costs and attorney's fees under MCL 600.2919(a).

86.    Defendants fraudulently concealed the amount that they had been paid by the third parties.

87.    By this conduct Plaintiffs have been injured in excess of $75,000.

## <u>PRAYER FOR RELIEF</u>

88.    Plaintiffs pray that judgement be entered against Defendants and in favor of Plaintiffs as follows:

A.    For damages against Defendants, and each of them, jointly and severally, in an as yet undetermined amount in excess of $75,000, the amount duly trebled in accordance with MCL 600.2919(a).

B.    For the costs of investigation and litigation reasonably incurred, as well as attorney fees in accordance with MCL 600.2919(a);

D.    An accounting of all benefits, consideration and profits received and/or paid, directly or indirectly, including, but not limited to, the imposition of constructive trusts with tracing;

E.    The imposition and execution of equitable liens and all other injunctive relief;

F.   Orders of divestiture of any interest, including real or personal property, money, or obligations or otherwise, wrongfully obtained through the proceeds of any funds acquired in the exercise of fraudulent conduct; and

G.  For such other damages, relief and pre-judgment interest as the court may deem just and proper to award plaintiff's complete relief.

Respectfully Submitted,

Dated: December 11, 2019

By: /s/ *Bruce A. Miller*
MILLER COHEN, PLC
Bruce A. Miller  (P17746)
Keith D. Flynn (P74192)
7700 Second Ave., Ste. 335
Detroit, MI  48202
(313) 964-4454
(313) 954-4490 – Facsimile
brucemiller@millercohen.com
kflynn@millercohen.com

22

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MIRELA USELMANN,**
**D/B/A SAPPHIRE TRUCKING, INC.,**          Case No.
**GABRIEL BICLEA,**
**D/B/A MB TRUCKING, INC.,**                Hon.
**ION GUTU, D/B/A GPA TRUCKING, INC., and**
**DUMITRU MARIUS RENDENCIUC,**
**D/B/A DMR EXPRESS, INC**.
                    Plaintiffs,

vs.

**RAZVAN POP, MARIA POP,**
**R.S.P. EXPRESS, INC.,**
**NA TRUCK REPAIR, LLC**
**and JOHN DOE CORPORATION ONE**
**and JOHN DOE CORPORATION TWO**,
_____ Defendants. _____

Bruce A. Miller (P17746)
Keith D. Flynn (P74192)
MILLER COHEN, PLC.
7700 Second Ave., Ste. 335
Detroit, MI  48202
(313)964-4454
(313)964-4490 facsimile
brucemiller@milercohen.com
kflynn@millercohen.com

_____

## <u>DEMAND FOR TRIAL BY JURY</u>

NOW COME PLAINTIFFS, **MIRELA USELMANN**, doing business as

**SAPPHIRE TRUCKING, INC., GABRIEL BICLEA**, doing business as **MB**

**TRUCKING, INC.**, **ION GUTU**, doing business as **GPA TRUCKING INC.**, and

**DUMITRU MARIUS RENDENCIUC**, doing business as **DMR EXPRESS,**

**INC.**, on behalf of themselves and all similarly situated persons, known or unknown,

by and through their attorneys, **MILLER COHEN, P.L.C.**, hereby demand a trial

by jury.

Respectfully submitted,

**MILLER COHEN, P.L.C.**

Dated:  December 11, 2019 By: /s/ *Bruce A. Miller*
Bruce A. Miller  (P17746)
Keith D. Flynn (P74192)
7700 Second Ave., Ste. 335
Detroit, MI  48202
(313) 964-4454
brucemiller@millercohen.com
kflynn@millercohen.com

24

# EXHIBIT A

*TRK # 2457,*
*IFTA # 124629*

## AGREEMENT

THIS AGREEMENT made and entered into this _Sept 9_ in the year 20 _13_, by and between RSP EXPRESS INC hereafter referred to as "Carrier", and _____ hereafter referred to as "Contractor"

*DMR EXPRESS*
*( MARIUS REZENCIUC )*

WITNESSETH:

WHEREAS, Carrier is a motor carrier engaged in the transportation of freight under permits and authorizations issued by the various state and/or federal transportation regulatory agencies; and

WHEREAS, Contractor is engaged in the business of transporting freight for motor carriers and possesses or will possess equipment suitable for such transportation; and

WHEREAS, the parties desire to enter in to this Agreement whereby Contractor will transport freight on behalf of Carrier on an exclusive basis.

NOW THEREFORE, in consideration of the mutual covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby agreed as follows:

1. EXCLUSIVE USE AND TERM OF AGREEMENT. Contractor agrees to furnish the "Equipment" to Carrier continuously and for a period beginning on the _9_ day of _SEPT_, in the year _2013_ and ending at midnight on the 31st day of December, in the year _____. Contractor agrees to make the Equipment available to Carrier, with qualified drivers previously approved by the Carrier, at times requested by Carrier and to pick up loads and transport them to destinations designated by Carrier. Contractor agrees not to use the Equipment provide by the Carrier for anyone other than Carrier while this Agreement is in effect without the written consent of the Carrier.

2. PAYMENT. Carrier shall pay to Contractor a sum equal to 80 (%) percent of the gross revenues (after allowable deductions as provided herein) received by Carrier from Carrier's customers for the transportation of any freight by Contractor. Such amounts shall be payable to Contractor within fifteen (15) days after such time as Contractor fully completes delivery of each shipment, and delivers to Carrier those documents necessary for Carrier to secure payment from its customer. The required documents are delivery receipts, bills of lading, and properly completed driver's logs. The Contractor also agrees to provide to Carrier the following additional documents pertaining to each trip: vehicle inspection reports, any other shippers' documents, any law enforcement tickets or citations, and any accident or loss reports. The parties understand and agree that prompt submission of the additional documents listed immediately above is not a requirement for payment, but is a part of the terms of this Agreement, and Contractor's failure to provide the additional documents listed immediately above shall constitute breach of this Agreement.

3. CONTRACTOR'S EMPLOYEES.

   A. Contractor shall employ, on his own behalf, all drivers for the Equipment and shall be solely responsible for the payment of their wages, benefits, social security taxes, withholding taxes, unemployment and workers compensation insurance, fees, and all other amounts required by Government agencies to be paid by employers on behalf of or to employees. Contractor shall likewise employ on his behalf and at his own expense all driver's helpers and other laborers required to carry out the purpose of this Agreement.

2

B. This Agreement does not create a fiduciary relationship between the parties. Contractor is an independent contractor, and nothing in this Agreement is intended to constitute Contractor as agent, legal representative, subsidiary, joint venturer, partner, employee or servant of Carrier for any purpose whatsoever. Contractor is in no way authorized by this Agreement to make any contract, agreement, warranty or representation or to create any obligation, express or implied, on behalf of Carrier, and Contractor shall not act or represent that he has the right to act on behalf of Carrier.

C. Contractor is, and shall remain, an independent contractor solely responsible for all obligations and liabilities, including taxes of, and all loss and damage to, its Equipment and property connected therewith, as well as any and all claims and demands based on damage or destruction of property or on injury, illness or death of any person directly or indirectly resulting from its operation.

4. **EMPLOYEE'S AND CONTRACTOR'S QUALIFICATIONS.**

A. All persons employed by Contractor (and Contractor himself) shall be qualified to meet the requirements of all Federal, State and Local laws and the rules and regulations of the Department of Transportation, the Federal Highway Administration, as well as any state regulatory bodies.   Carrier shall have the right to approve any employees used by Contractor to haul freight for Carrier's customers in this regard.

B. Carrier will compile and maintain all Driver Qualification Files.  Contractor agrees to make its drivers available for such testing as may be required by state or federal regulations.

5. **EXPENSES, TAXES AND FINES.**

A. Contractor agrees to pay all operating expenses relating to or connected with the operation of the Equipment, including the cost of fuel, oil, fuel taxes, maintenance and service of Equipment, materials and repair parts, inspection fees, ferry and toll charges, Federal Highway Use Taxes, State Mileage and Fuel Taxes, the cost of base plates and state vehicle registration fees, ad valorem personal property taxes, parking fines, fines for moving violations, parking charges, and any other costs or expenses directly resulting from the ownership or operation of the Equipment.  As its sole discretion, Carrier may elect to pay such expenses, taxes and fines for and on behalf of Contractor, and Contractor agrees that such payments may then be deducted from its settlements by Carrier.

B. Carrier is not responsible for any fines or violations which result from acts or omissions of Contractor, or which result from Contractor's violation of an established work rule of Carrier.  Carrier agrees to be responsible for fines for overweight or oversized trailers when the trailers are preloaded, sealed, or the load is containerized, or when the trailer or lading is otherwise outside of Contractor's control, and for improperly permitted over-dimension and overweight loads.

6. **LICENSES, PERMITS AND AUTHORIZATIONS.**  Carrier shall obtain on behalf of Contractor, but at Contractor's expense, all licenses, registration, permits, base plates, and authorization required in the operation of Equipment.  Contractor shall reimburse Carrier for such expenses for the cost thereof but, in any case, at a rate of not less than **total cost of tags and permits plus XX% OF GROSS per week to cover insurance costs.**  In the event of termination of this Agreement, Contractor

shall be entitled to a prorated credit for any unused portion of any registration fee, base plate fees, or prepaid taxes which have been charged to and paid for by Contractor and issued in the name of Carrier if, and only to the extent that Carrier receives a refund on said taxes or fees, or is able to transfer such base plates, tax credits, and registrations to the equipment operated by another Contractor, and receives payment for such taxes, registrations, and fees from the new Contractor. The parties understand and agree that termination of this Agreement shall not terminate the obligation of Contractor to reimburse Carrier for base plates for the entire year, unless Carrier is able to transfer such base plates to the equipment operated by another Contractor. Upon termination of this Agreement, Contractor agrees to immediately return all base plates, permits, and other authorizations issued under this Agreement, to Carrier, and further agrees to immediately remove all identification devices from its equipment which indicate a relationship to Carrier.

7. **ADVANCEMENTS.**  In the event Contractor shall fail to perform any of its obligations set forth in this Agreement herein (said obligations involving the disbursement of funds), Carrier shall have the option to advance funds for the payment of said obligations and to thereafter deduct sums equal to those advancements from Contractor's settlements or to collect said sums from Contractor. Upon request of Contractor, Carrier, in its sole discretion, may make cash advances to Contractor. Contractor agrees that Carrier may withhold any portion of such advance charges from the first settlement following the advance.

8. INSURANCE.

    A.  Carrier shall provide and maintain general liability auto and cargo liability insurance, insuring the Carrier against loss.  Said insurance shall become effective upon the execution of this Agreement and shall extend coverage in all areas of the United States where Carrier legally operate.Independent contractor a agrees that all accidents, regardless of severity, will be reported immediately to the main office Supervisor and insurance adjuster or any other person so directed by the Carrier(or it's lessees),by telephone pr in absence thereof, by direct comunication.Independent contractor is also responsible for Carrier's insurance deductible or self retention cost incurred as a result of any accident witch is the fault of the INDEPENDENT CONTARCTOR or its employee.

    B.  Contractor shall provide and maintain at his own expense bobtail, dead head, and personal property insurance in amounts satisfactory to Carrier.  Said insurance shall become effective upon execution of this Agreement and coverage shall be extended to all of the areas where Carrier legally operates its authority and permits and/or has filed said authority and permits.  Insurance provided for herein shall be primary to any and all other collectible insurance available to Carrier.

    C.  Carrier shall provide and maintain cargo insurance.  However, Contractor shall be responsible to pay Carrier an amount of up to the deductible portion of Carrier's insurance, for any cargo losses sustained by Carrier to cargo under the control of Contractor, when said losses are due to the negligence of Contractor or its employees.  Contractor agrees to provide and maintain insurance coverage to protect itself against such loss.The amount of the deductible it's 2500.00$

    D.  Contractor shall provide and maintain at Contractor's expense workers compensation insurance covering Contractor and all persons employed by him, and shall provide proof of such insurance to Carrier.

E. Contractor agrees that, in the event of any loss, he will exercise due diligence and take all actions prudent and necessary at his own risk and expense to minimize such loss and to protect all property from any further loss. The expenses so incurred shall be borne by the Carrier to the extent the efforts resulting in such expense were successful.

F. Contractor shall provide proof of all insurance required to be procured by him under the terms of this Agreement. Such proof shall be provided to Carrier at time of execution of this Agreement. All such policies shall provide Carrier as an additional named insured and require the insurance company to give Carrier ten (10) days notice prior to cancellation thereof and shall be with companies approved by Carrier.

9. LOCATION OF EQUIPMENT. Contractor agrees to notify Carrier by telephone of the geographical location of the Equipment each day that this Agreement is in effect. Knowledge of the location of the Equipment is of vital importance to operation of Carrier's business and, therefore, if Contractor violates the provisions of this paragraph, Contractor agrees to pay to Carrier as a penalty the sum of Twenty-Five Dollars ($25.00) for each day Contractor fails to comply with this Article.

10. IDEMNIFICATION. Under no circumstances shall Carrier be liable for any act, omission, contract, debt, or any other obligation of or claim or judgment against Contractor. Contractor shall indemnify and hold Carrier harmless against any and all claims arising through no negligence of Carrier, directly or indirectly from, as a result of, or in connection with Contractor's operation of its business, and against the costs, including attorney's fees, of settling or defending against them.

11. DEFAULT BY CONTRACTOR. In the event Contractor commits a breach of any term of this Agreement, Carrier shall have the right to terminate this Agreement immediately without notice to Contractor.

12. REMEDIES. Upon default Carrier shall have the right to exercise any one or more of the following remedies:

A. Proceed by appropriate court action to enforce performance by the Contractor or to recover from Contractor any and all damages and expenses which Carrier shall have sustained by reason of Contractor's default or on account of Carrier's enforcement of its remedies hereunder, and/ or

B. Terminate Contractor's right hereunder. All rights and remedies conferred on Carrier by this Agreement shall be cumulative and in addition to every other right and remedy available to Carrier at law or equity.

C. In the event that Contractor, upon termination of this Agreement, fails or refuses to return any trailer or other equipment owned or operated by Carrier immediately upon such termination, Contractor shall pay to Carrier the sum of One Hundred Dollars ($100.00) per day until such trailer or equipment is returned to the general office of the Carrier. This payment is to be construed as liquidated damage (it being understood and agreed that the cost to Carrier of the loss of the use of such trailer and other equipment is or would be difficult or impossible of accurate determination) and not as a penalty.

13. WORK AND SAFETY. Contractor agrees to abide by, and to cause his employees to abide by, all of Carrier's work and safety rules as Carrier may from time to time establish the same.

14. **DAMAGE TO TRAILERS.** Contractor assumes all risks of loss, theft or destruction of, and damage to, all trailers which are assigned to him by Carrier and will hold Carrier harmless from any loss thereof and from all claims and liens for storage, labor and materials, including expenses and attorney fees. The limit of Contractor's risk under this section shall be the amount of deductible under Carrier's insurance on said trailers.

15. **SOLICITATION OF CARRIER'S CUSTOMERS.** Contractor, during the duration of this lease agreement, and for a period of one year following the termination of this lease agreement, shall not, for any reason whatsoever, directly or indirectly, for himself or on behalf of or in conjunction with any other person, firm, or corporation, call upon or solicit the business of any customer served by Contractor under this agreement, for the purpose of soliciting loads or business for anyone other that Carrier, and shall not, for a period of one year following termination of this lease agreement, attempt to divert or take away the business or patronage or any part thereof which may be enjoyed by Carrier during the term of this lease agreement, including but not limited to the traffic presently handled by Carrier. The parties agree that due to the nature of this noncompetition agreement, monetary damages may not provide an adequate or timely remedy, and do hereby agree that injunctive action is an appropriate relief.

16. **FREIGHT BILLS AND TARIFFS.** Receipt and negotiations of CARRIER'S check in payment, constitutes acceptance in full satisfaction of amounts due for trips identified by the payment. Once CARRIER'S check has been negotiated by INDEPENDENT CONTRACTOR ,CARRIER shall not be obligated to produce any records or documents relating to any trips for witch payment has been made.

17. **NOTICES.** Any notice hereunder shall be in writing and shall be sent by personal service or by United States certified or registered mail, with postage prepaid, addressed to the parties utilizing the addresses listed in this Agreement. Either party, by similar written notice may change the address to which notice shall be sent. Notices under this paragraph will be deemed delivered and received four work days after being mailed. FAX messages shall be deemed complete upon transmission.

18. **EQUIPMENT.** Contractor agrees to furnish the following described equipment ("Equipment") for the transportation of freight on behalf of Carrier:

|  | MAKE | YEAR | SERIAL NUMBER | UNIT NUMBER (TO BE SUPPLIED BY CARRIER) |
|---|---|---|---|---|
| Tractor: | STERLING | 1999 | 27 WY 8XYB7X AF I 2451 | 2451 |
| Trailer: |  |  |  |  |

19. **ASSIGNMENT.** Contractor shall not assign this Agreement or any of the rights or obligations hereunder to anyone without the prior written consent of Carrier.

20. <u>SCOPE AND MODIFICATION</u>.  This Agreement constitutes the entire agreement between the parties and supersedes all prior and contemporaneous, oral or written agreements or understandings of the parties.  No interpretation, change, or waiver or any of the provisions hereof shall be binding upon the parties hereto unless mutually agreed to in writing and signed by both parties.  No modification, waiver, termination, rescission, discharge or cancellation of the Agreement shall affect the right of any party hereto to enforce any claim or right hereunder, whether or not, liquidated, which occurred prior to the date of such modification, waiver termination, rescission, discharge or cancellation.  This Agreement has been executed in duplicate originals, any one of which shall be admissible as evidence of the agreement between the parties.  In the event of any dispute over the content of this Agreement, Carrier's copy shall be controlling.

21. <u>CONSTRUCTION AND SERVERABILITY</u>.  Except as expressly provided to the contrary herein, each paragraph, portion or provision of this Agreement shall be considered severable; and if for any reason any paragraph, portion or provision herein is determined to be invalid and contrary to, or in conflict with, any existing or future law or ruling or regulation by a court or agency having valid jurisdiction in a proceeding to which Carrier is a party, such shall not impair the operation of nor affect such other paragraphs, portions or provisions of this Agreement as may remain otherwise intelligible, and the latter will continue to be given full force and effect and bind the parties hereto, and said invalid articles, paragraphs, portions or provisions shall be deemed not to be a part of this Agreement.

22.  <u>MISCELLANEOUS</u>.

A. This Agreement takes effect upon its acceptance and execution by Carrier and shall be governed by and construed in accordance with the laws of the state of domicile of Carrier.  Contractor consents to the jurisdiction of any state or federal court of general jurisdiction which sits in or has general jurisdiction over the county in which Carrier has its principal place of business with respect to any proceeding arising out of this Agreement.  Contractor agrees that mailing to its last known address by registered mail of any process shall constitute lawful and valid process.

B. This instrument contains the entire agreement of the parties, and no representations, inducements, promises or agreements, oral or otherwise, not embodied herein, were made by the parties and none shall be of any force or effect.

C. In the case of breach or a threatened breach of any provision of this Agreement by Contractor, Carrier shall, in addition to any other remedy it may have, and notwithstanding any other provision hereof be entitled to an injunction restraining Contractor from committing or continuing to commit any breach or threatened breach of this Agreement, with out showing or proving any actual damage sustained by Carrier.

D. The failure of Carrier to require performance by Contractor of any provision of this Agreement shall in no way affect the right of Carrier thereafter to enforce such provision, nor shall the waiver by Carrier of any breach of any of the provisions of this Agreement be construed as a waiver of any subsequent breach of this Agreement, or as a waiver of any provision of the Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and date first above written.

7

RSP EXPRESS INC
CARRIER

By _Maria Ana Pop_

__MARIA ANA POP__

Address 37707 SCHOOLCRAFT RD

__LIVONIA,MI 48150__

Telephone __734-578-0799__

FAX  __734-462-4239__

S.S. NO. or FED   _13-4314295_

AMR EXPRESS INC
(CONTRACTOR)

X _Marius Regenciuc_

MARIUS REGENCIUC

1250 BALMORAL DR

MOUNT CLEMENTS, MI 48043

313-717-3221.

_26-0340656_

## TERMINATION

The AGREMENT is to become effective this _9th_ day of _SEPT_,
20 _13_ and shall remain in effect for a period of one year from
such date,
and from year to year thereafter, subject to the right of either
party hereto
cancel or terminate the AGREEMENT at any time upon not less
that thirty
(30) days written notice of one party to the other.

# EXHIBIT B

# Driver/Contractor Settlement

1/16/2014

**Settlement #: 3620**

Page 1

**Driver Name**
MARIUS REDENCIUC

**Pay Type:** per

**Pay Rate:** $0.80    2451

Gross Pay: $5,080.00
-- Advances: $2,487.06
++ Expenses: $0.00

Net Pay: **$2,592.94**

| Pro # | Date | Trk/Trl | Origin | Destination | Revenue | Fuel | Stops | DH | Hours | Loaded | Tot Mi | Per Dm | Total Pay |
|-------|------|---------|--------|-------------|---------|------|-------|-----|-------|--------|--------|--------|-----------|
| 21049 | 1/13/2014 | 2451 | CHESTERFIELD ,MI | ARLINGTON ,TX | $2,600.00 | | 0 | 0 | $0.00 | 0 | 0 | $0.00 | $2,080.00 |
| 21108 | 1/14/2014 | 2451 | GARLAND ,TX | LAREDO ,TX | $800.00 | | 0 | 0 | $0.00 | 0 | 0 | $0.00 | $640.00 |
| 21144 | 1/16/2014 | 2451 | LAREDO ,TX | TROY ,MI | $2,950.00 | | 0 | 0 | $0.00 | 0 | 0 | $0.00 | $2,360.00 |
| | | | | | **$6,350.00** | | 0 | 0 | **$0.00** | 0 | 0 | **$0.00** | **$5,080.00** |

| Pro # | Check #/Description | | | Driver | Amount | Charge | Total Adv | Date |
|-------|--------------------|--|--|--------|--------|--------|-----------|------|
| | FUEL | | | | | $2,366.56 | $2,366.56 | |
| | FEE | | | | | $7.50 | $7.50 | |
| | LOG BOOKS | | | | | $113.00 | $113.00 | |
| | | | | | **Total Advances:** | | **$2,487.06** | |

1/16/2014 2:25:59 PM