UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIRELA USELMANN, D/B/A SAPPHIRE
TRUCKING, INC., ET AL.,

Plaintiffs,                                    Case No. 19-cv-13652

v.                                             U.S. DISTRICT COURT JUDGE
                                               GERSHWIN A. DRAIN
RAZVAN POP, ET AL.,

Defendants.

_____/

**OPINION AND ORDER DENYING WITHOUT PREJUDICE
DEFENDANTS' MOTION TO DISMISS COUNT II AND DENYING
DEFENDANTS' MOTION TO DISMISS COUNTS I, III-VI [#10]**

### I. INTRODUCTION

The instant action arises out of a freight delivery contract dispute between

Plaintiffs, various delivery drivers, and Defendants, the trucking company owners.

*See* ECF No. 1.  Plaintiffs include Mirela Uselmann, doing business as Sapphire

Trucking Inc. ("Uselmann"), Gabriel Biclea, doing business as MB Trucking, Inc.

("Biclea"), Ion Gutu, doing business as GPA Trucking, Inc. ("Gutu"), and Dumitru

Marius Rendenciuc, doing business as DMR Express, Inc. ("Rendenciuc"), on behalf

of themselves and all similarly situated persons (collectively, "Plaintiffs").  *Id.*  On

December 11, 2019, Plaintiffs commenced this action against Defendants Razvan

Pop, Maria Pop, R.S.P. Express, Inc. ("RSP Express"), and NA Truck Repair, LLC

("NA Truck Repair") (collectively, "Defendants"), alleging civil RICO violations, breach of contract, unjust enrichment, promissory estoppel, and conversion.  *Id.*

Presently before the Court is Defendants' Motion to Dismiss, filed on January 21, 2020.  ECF No. 10.  Plaintiffs filed their Response in Opposition on February 11, 2020.  ECF No. 12.  Defendants filed their Reply on February 25, 2020.  ECF No. 13.  A hearing on this matter was held on July 13, 2020.  For the reasons that follow, the Court will **DENY WITHOUT PREJUDICE** Defendants' Motion to Dismiss Count II and **DENY** Defendants' Motion to Dismiss Counts I, III-VI [#10].

## II. FACTUAL BACKGROUND

Plaintiffs are each truck owner-operators who contracted with Defendant RSP Express to transport freight for third-party shippers.  ECF No. 10-1, PageID.215; ECF No. 1, PageID.3.  The parties entered into Agreements that named RSP Express as a Carrier and the Plaintiffs' company, as well as their individual names, as a Contractor.  *See* ECF No. 1, PageID.26.  Pursuant to the sample Agreement provided by Plaintiffs, the Contractor agreed to utilize its own equipment and vehicles to exclusively transport freight on behalf of the Carrier.  *Id.*  Importantly, the Agreement also provided that the "Carrier shall pay to Contractor a sum equal to 80 (%) percent of the gross revenues (after allowable deductions as provided herein) received by Carrier from Carrier's customers for the transportation of any freight by Contractor."  *Id.*  RSP Express, therefore, was to receive twenty percent of the gross

2

revenues paid by the third-party shipper for each load the Plaintiffs transported, while Plaintiffs were to receive eighty percent.  ECF No. 10-1, PageID.216.

Once Plaintiffs transported the freight, the Defendants mailed Plaintiffs Driver/Contractor Settlement statements that purported to represent the gross revenue paid by the third-party shipper.  ECF No. 1, PageID.34.  Plaintiffs allege that these statements were falsified because "Defendants would skim a portion" of the 80% amount and "misrepresent[] the gross revenues that RSP had actually received."  ECF No. 12, PageID.287.  Plaintiffs claim this was a nearly decades-long scheme that was only discovered by Plaintiffs after a non-party driver filed a similar lawsuit in 2018.  *Id.*  The Agreements relevant to the present case existed between 2006 and 2015.  ECF No. 1, PageID.3.  The Agreements were terminated in 2015 and RSP Express subsequently entered into new agreements with select contractors. ECF No. 10-1, PageID.216.

Additionally, Defendant NA Truck Repair is a separate truck repair company owned by Defendant Maria Pop.  ECF No. 10-1, PageID.215; ECF No. 12, PageID.288.  NA Truck Repair works on vehicles for both RSP Express and third-party clients.  ECF No. 12, PageID.288.  Plaintiffs purport that NA Truck Repair unlawfully tampered with the emission control systems in RSP Express vehicles.  *Id.* Defendants allegedly failed to report these services on invoices or tax returns.  *Id.* In doing so, Plaintiffs claim, Defendants' tampering "made it more difficult for

Plaintiffs to compete with other truck drivers whose vehicles have been illegally modified." *Id.*

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to challenge the court's subject matter jurisdiction. In analyzing the motion,

> [t]here is no presumption that the factual allegations set forth in the complaint are true and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." [*United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. Cir.), *cert. denied*, 513 U.S. 868 (1994)]. The court has wide discretion to consider materials outside the pleadings in assessing the validity of its jurisdiction. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). The plaintiff bears the burden of demonstrating subject matter jurisdiction. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

*Ashley v. United States*, 37 F. Supp. 2d 1027, 1029 (W.D. Mich. 1997). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Sweeton v. Brown*, 27 F.3d 1162, 1169 (6th Cir. 1994) (quoting *United States v. Siviglia*, 686 F.2d 832, 835 (10th Cir. 1981), *cert. denied*, 461 U.S. 918 (1983)). When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive a motion to dismiss. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 817 (6th Cir. 2017). A defendant may properly challenge a plaintiff's standing to sue under Rule 12(b)(1). *Lyshe v. Levy*, 854 F. 3d 855, 858

(6th Cir. 2017) (citing *Allstate Ins. Co. v. Glob. Med. Billing, Inc.*, 520 F. App'x 409, 410-411 (6th Cir. 2013)).

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2)); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To meet this standard, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678–80 (applying the plausibility standard articulated in *Twombly*).

When considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of his factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). While courts are required to accept the factual allegations in a complaint as true, *Twombly,*

550 U.S. at 556, the presumption of truth does not apply to a claimant's legal conclusions, *see Iqbal,* 556 U.S. at 678.  Therefore, to survive a motion to dismiss, the plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555) (internal citations and quotations omitted).

## IV. DISCUSSION

Defendants move to dismiss all six of Plaintiffs' claims based on (1) lack of standing; (2) statute of limitations expiration; (3) preemption; and (4) failure to state viable claims.  Plaintiffs' claims include two violations of the civil RICO statute 18 U.S.C. § 1964(c) (Counts I and II); breach of contract (Count III); unjust enrichment (Count IV); promissory estoppel (Count V); and conversion (Count VI).   The Court will address each of Defendants' arguments in turn.

### A. Standing

The Sixth Circuit has noted that "[f]ederal courts have constitutional authority to decide only 'cases' and 'controversies.'" *Crawford v. Dep't of Treasury*, 868 F.3d 438, 452 (6th Cir. 2017) (quoting U.S. CONST. art. III § 2) (citing *Muskrat v. United States*, 219 U.S. 346 (1911)).  "And there is no case or controversy if a plaintiff lacks standing to sue."  *Duncan v. Muzyn*, 885 F.3d 422, 427 (6th Cir. 2018) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).  "A claimant bears the burden

of establishing standing and must show it 'for each claim he seeks to press.'" *Hagy v. Demers & Adams*, 882 F.3d 616, 620 (6th Cir. 2018) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).  If a claimant fails to establish standing, a court must dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1). *Lyshe v. Levy*, 854 F.3d 855, 858 (6th Cir. 2017) (citing *Allstate Ins. Co. v. Glob. Med. Billing, Inc.*, 520 F. App'x 409, 410–11 (6th Cir. 2013)).

"The 'irreducible constitutional minimum' of standing comprises three elements: (1) an injury-in-fact, which is (2) fairly traceable to the defendant's challenged conduct, and that in turn is (3) likely redressable by a favorable judicial decision." *Duncan*, 885 F.3d at 427 (quoting *Spokeo, Inc.*, 136 S. Ct. at 1547).

Here, Defendants argue that Plaintiffs lack standing to sue because their companies, not their individual names, are specified in the Carrier-Contractor Agreements.  As owners or representatives of their companies, Defendants claim, Plaintiffs are not the true parties in interest and cannot maintain their claims against any Defendant.  But Defendants' contentions fail to address the Agreements' language and the close link between the individual Plaintiffs and their named companies.

First, at least one of the Agreements with RSP Express named both Plaintiff Rendenciuc's company, DMR Express, and his individual name in the "Contractor" section of the first paragraph.  ECF No. 1, PageID.26.  During the hearing on this

matter, Plaintiffs represented that three out of their four Agreements followed this pattern, and that this reveals how closely linked the individuals and companies were. Defendants counter this argument by citing to *Warren*, which held that a plaintiff lacked standing to sue in his individual capacity as his company's creditor, sole shareholder, and chairman of the board. *Warren v. Manufacturers Nat. Bank of Detroit*, 759 F.2d 542, 544 (6th Cir. 1985). The Sixth Circuit went on to note that the plaintiff "claims his injuries are different from those inflicted upon" the company, so his injuries were "merely incidental to the corporation's injury." *Id.* at 544-545.

In contrast to *Warren*, Plaintiffs' claims in the instant case are identical to the purported injuries inflicted upon their companies. Further, the individual Plaintiffs assert that they were, at the very least, parties in interest to the 2015 Agreements. During the hearing on the instant matter, Plaintiffs explained that the named businesses were simply corporate extensions of the individual Plaintiffs that allowed them to enter into the relevant Agreements. Further, the Supreme Court has clarified that individuals may bring suit under the civil RICO statute if the predicate acts have caused injury to either their business or their property. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495 (1985) ("If the defendant engages in a pattern of racketeering activity . . . and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c).").

At this early dismissal stage, Plaintiffs have adequately demonstrated that Defendants' alleged conduct injured the corporate entities and, by extension, the individual Plaintiffs.   There is sufficient evidence to link the identities of the corporations and the individual Plaintiffs based on the supplied Agreement and the relevant case law.   The Court therefore finds that Plaintiffs have met the constitutional minimum to establish standing, and the Complaint will not be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

### B. Statute of Limitations

Defendants next argue that Counts I and III through VI are barred by their respective statutes of limitations and should be dismissed.   Plaintiffs assert that, because the parties disagree about when the statute of limitations began to run due to purported fraudulent concealment, their claims should not be dismissed as time barred.

Counts I and II of Plaintiffs' Complaint allege a civil violation of RICO, which carries a four-year statute of limitations.   *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987).   "The four-year period begins to run when a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation."   *Sims v. Ohio Cas. Ins. Co.*, 151 F. App'x 433, 435 (6th Cir. 2005) (citing *Rotella v. Wood*, 528 U.S. 549, 553-55 (2000)).   Under Michigan law, the statute of limitations for breach of contract claims

seeking monetary damages, as well as quasi-contract claims of promissory estoppel and unjust enrichment, is six years.   Mich. Comp. Laws § 600.5807(9).   A conversion claim under Michigan law is subject to a three-year statute of limitations. *Tillman v. Great Lakes Truck Ctr., Inc.*, 277 Mich. App. 47, 49, 742 N.W.2d 622, 623 (2007).   When a plaintiff alleges fraudulent concealment of the existence of a claim, their action "may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim . . . although the action would otherwise be barred by the period of limitations period."   Mich. Comp. Laws § 600.5855.

Defendants claim that Plaintiffs' limitations period began to run "certainly no later than December 31, 2014, the last time the Contractors could have transported and delivered or tendered delivery of shipments in accordance with the pre-January 2015 agreements."   ECF No. 10-1, PageID.224.   If the statute of limitations commenced at the end of 2014, as Defendants assert, Plaintiffs' claims were filed after their claims accrued because the Complaint was filed on December 11, 2019. Plaintiffs allege, however, that Defendants acted to conceal all of Plaintiffs' claims by failing to disclose the true amounts the third-party shippers paid to the Defendants.  If true, these misrepresentations prevented Plaintiffs from knowing, or even suspecting, that they were not receiving their owed compensation under the Agreements for many years.  Plaintiffs state that it was not until "April or May 2018"

that they suspected any wrongdoing by Defendants.  ECF No. 12, PageID.315.  If true, Plaintiffs claims were properly pled within the statute of limitations under both the RICO injury discovery rule and the state fraudulent concealment rule.  *See Rotella*, 528 U.S. at 553-55; Mich. Comp. Laws § 600.5855.

Additionally, Defendants aver that Plaintiffs' claims are time-barred by the eighteen-month statute of limitations provided under the federal Motor Carrier Act.  *See* 49 U.S.C. §§ 14705(a) and (g).  This argument relates to Defendants' contention, analyzed *infra*, that Plaintiffs' state law claims are preempted by this federal statute, and that Plaintiffs were therefore required to bring their claims within eighteen months after they "delivered or tendered delivery of a shipper's property."  ECF No. 10-1, PageID.224.  Plaintiffs argue that this statute, and its corresponding statute of limitations, does not bear on the instant matter because they are not raising claims under the federal Motor Carrier Act.  But regardless of the applicability of the Motor Carrier Act, Defendants' assertions fail to address Plaintiffs' underlying allegations of fraudulent concealment, which impact the potential tolling of Plaintiffs' claims.

Accordingly, in weighing the parties' arguments, the Court must accept Plaintiffs' allegations as true at the dismissal stage.  *Lambert*, 517 F.3d at 439.  This Court finds that a factual dispute exists as to the onset date of the applicable statues of limitations and whether Plaintiffs acted reasonably and diligently to investigate

any suspicions of wrongdoing before 2018. Therefore, the Court will deny Defendants' motion to dismiss on statute of limitations grounds.

### C. Preemption

As raised in the previous section, Defendants also argue that Plaintiffs' claims for unjust enrichment, promissory estoppel, and conversion (Counts IV-VI) are preempted by the Federal Aviation Administration Act of 1994 ("FAAA"), recodified as amended as 49 U.S.C. § 14501. *See In re Fed. Preemption of Provisions of the Motor Carrier Act*, 223 Mich. App. 288, 293, 566 N.W.2d 299, 301 (1997). Defendants assert that § 14501(c)(1) "preempts all claims against freight brokers premised on state statute or common law, except claims for breach of contract." ECF No. 10-1, PageID.233. Conversely, Plaintiffs argue that the counts bringing state law claims do not fall under the pertinent provisions of the FAAA because they relate to conduct that occurred after the transportation of property. ECF No. 12, PageID.307.

The Court is not persuaded by Defendants' contentions that Plaintiffs' claims fall within the ambit of FAAA preemption. The relevant language in § 14501 provides that the FAAA preempts a state "law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). The Sixth Circuit analyzed a similar issue in *Solo*,

undertaking a thorough examination of the statutory landscape for preemption under the FAAA and the similarly worded Airline Deregulation Act. *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 797 (6th Cir. 2016). In its analysis, the Sixth Circuit noted that the United States Supreme Court considered whether a state law claim "synonymously appl[lied] to all contracts as a matter of state policy." *Solo*, 819 F.3d at 798; *see Nw., Inc. v. Ginsberg*, 572 U.S. 273, 286 (2014).

The Sixth Circuit went on to distinguish between a plaintiff's unjust enrichment claim and the broader duty of good faith and fair dealing in *Solo*. 819 F.3d at 798. In this comparison, the Sixth Circuit suggested that the plaintiff's unjust enrichment claim may not be preemptable because "unjust enrichment serves to 'effectuate the intentions of parties or to protect their reasonable expectations,' and thus looks to the particular parties to a transaction rather than a universal, state imposed obligation" such as the duty of good faith. *Solo*, 819 F.3d at 798. The case is also persuasive on the instant matter because the *Solo* plaintiff's claim was based on fraud as well, and the plaintiff sought only to "hold[] parties to their agreements." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 220 (1995). While the Sixth Circuit remanded the preemption question for further briefing on the matter at the district court level, it appears that the unjust enrichment claim in *Solo* remained viable a year after the prior opinion was issued. *See Solo v. United Parcel Serv. Co.*, No. 14-

12719, 2017 WL 3891956, at *1 (E.D. Mich. Sept. 6, 2017), *aff'd and remanded*, 947 F.3d 968 (6th Cir. 2020).

This Court is persuaded by the Sixth Circuit's analysis in *Solo* and finds the Plaintiffs state law claims are not preempted by the FAAA. As in *Solo*, Plaintiffs here seek to enforce promises under a mutual agreement—that Defendants would pay Plaintiffs eighty percent of the gross revenue paid by the third parties after delivery. As Plaintiffs note, the present dispute does not concern a law involving a "price, route, or service of any motor carrier," that the federal statute aims to govern and preempt. 49 U.S.C. § 14501(c)(1). Instead, Plaintiffs claim that Defendants engaged in fraudulent conduct that occurred separate from the actual transportation of property under § 14501(c)(1). As in *Solo*, Plaintiffs' claims require this Court to consider the specific actions of the "particular parties to a transaction rather than a universal, state imposed obligation." *Solo*, 819 F.3d at 798.

Accordingly, the Court finds that Plaintiffs' state law claims are not preempted by the FAAA and may proceed as pleaded.

### D. Plaintiff's RICO Claims (Count I and II)

Next, Defendants seek dismissal of Plaintiffs' civil RICO claims for failure to state a claim under Rule 12(b)(6).

Claims for civil violations of RICO are governed by 18 U.S.C. § 1962. The statute provides that:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). To state a RICO cause of action, a plaintiff must establish four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 791 (6th Cir. 2012) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006)). Generally, RICO pleadings are to be liberally construed. *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000) (citing *United States v. Qaoud*, 777 F.2d 1105, 1116 (6th Cir. 1985)).

Defendants rely on two arguments in its Motion, contending that Plaintiffs have failed to plead (1) the existence of a distinct RICO enterprise and (2) the requisite predicate racketeering acts to maintain their claims under § 1962(c). The Court will address each below.

### 1. Distinct RICO Enterprise

Defendants first assert that Plaintiffs fail to identify both RSP Express and NA Truck Repair as separate enterprises as required under § 1962(c). Defendants state that Plaintiffs have not distinguished between the actions of the corporation and the individual Defendants as required to establish a distinct RICO enterprise. Plaintiffs

dispute this characterization and argue that each of the four named Defendants are legally distinct entities, satisfying the pleading requirement at this stage.

Under RICO, the "person" associated with the enterprise may be either an individual or a corporation.  18 U.S.C. § 1961(3).  The "enterprise" itself may "include[] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  Notably, "[t]he enterprise itself is not liable for RICO violations; rather, the 'persons' who conduct the affairs of the enterprise through a pattern of racketeering activity are liable."  *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 490 (6th Cir. 2013) (additional citation omitted).  Therefore, establishing a RICO enterprise requires a plaintiff to "allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."  *Id.* (quoting *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)) (internal citations omitted).  The Sixth Circuit has identified this principle as the "distinctness" requirement, which ensures that a corporation by itself cannot be pled as both the "person" and the "enterprise" whose affairs are conducted by that person.  *See id.* at 492.

Here, Plaintiffs have adequately pled factual matter to establish that the Defendants are sufficiently distinct from the RICO enterprise.  The case law on this matter is multitudinous and at times inconsistent, and the Sixth Circuit broadly

observed that this "analysis is so fact-intensive that a generic test is difficult to formulate." *ClassicStar*, 727 F.3d at 491. Given that the instant matter is still at the dismissal stage, this Court must accept Plaintiffs' factual allegations, including those concerning the Defendants' conduct individually and through the corporate entities, as true. As pleaded, Plaintiffs allege that the actions between Defendants enabled the operation of a separate RICO enterprise. Similar to *ClassicStar*, Plaintiffs argue that Defendants Razvan Pop and Maria Pop engaged in fraudulent behavior, while the corporate entities (RSP Express and NA Truck Repair) "performed distinct roles that helped facilitate the fraudulent scheme." *Id.* at 493.

While Defendants cite to *Begala* in support of its arguments, it is not persuasive; Plaintiffs here have alleged, at the very least, that (1) RSP Express' registration as a motor carrier and (2) NA Truck Repair's license to work on vehicles are distinct elements that separate them from Razvan and Maria Pop. *See Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 782 (6th Cir. 2000); *see* ECF No. 12, PageID.301. These unique registrations of the corporate entities, therefore, provided the individual Defendants with a means to carry out the alleged fraud. *Compare with Begala*, 214 F.3d at 782 (finding that the plaintiff's complaint did not "contain facts suggesting that the behavior of the listed entities is 'coordinated' in such a way that they function as a 'continuing unit.'").

Accordingly, in viewing the facts in the light most favorable to Plaintiffs, this Court finds that Plaintiffs have sufficiently pled the existence of a distinct RICO enterprise for Counts I and II. The Court declines to grant Defendants' dismissal motion on these grounds.

### 2. RICO Predicate Acts

Defendants additionally argue that Plaintiffs failed to plead the requisite predicate acts under § 1961(1) to maintain their RICO claims. Plaintiffs contend that Defendants' assertions are not supported by case law and misidentify the predicate acts Plaintiffs are pleading in Counts I and II.

As previously stated, a plaintiff must allege that a RICO enterprise engaged in a pattern of racketeering activity, which must consist of "at least two predicate acts of racketeering activity occurring within a ten-year period." *Moon*, 465 F.3d at 723 (citing 18 U.S.C. § 1961(5)). RICO defines "racketeering activity" to include a multitude of offenses that are either "chargeable" under certain state criminal laws or "indictable" under specified federal criminal laws. 18 U.S.C. § 1961(1). Both the mail fraud statute, 18 U.S.C. § 1341, and the wire fraud statute, 18 U.S.C. § 1343, are listed as predicate racketeering offenses under RICO. *Id.*; *see Moon*, 465 F.3d at 723. The mail and wire fraud statutes contain the same basic elements, including: "first, that the defendant devised or willfully participated in a scheme to defraud; second, that he used or caused to be used an interstate wire communication

or the United States mail in furtherance of the scheme; and third, that he intended to deprive a victim of money or property." *United States v. Maddux*, 917 F.3d 437, 443 (6th Cir. 2019) (quoting *United States v. Faulkenberry*, 614 F.3d 573, 584 (6th Cir. 2010)) (internal citations omitted).

In the instant matter, Plaintiffs have pled sufficient facts to establish the existence of RICO predicate acts—mail fraud—in Count I.  Plaintiffs' claim in their first count is premised on the allegation that Defendants mailed thousands of statements that fraudulently concealed their obligation to pay Plaintiffs a certain sum in accordance with their Agreements.   This system, Plaintiffs aver, allowed Defendants to unlawfully withhold funds that were otherwise owed to the owner-operators.  *See* ECF No. 12, PageID.304.  As pleaded, these allegations are indicative of "a scheme . . . for obtaining money or property by means of false . . . representations[] or promises" under the mail fraud statute."  18 U.S.C. § 1341.

While Defendants here cite to the Sixth Circuit for the proposition that "[t]he object of the fraud must be money or property in the victim's possession," this conclusion mischaracterizes the holding of *Jackson*.  *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 568 (6th Cir. 2013).  The Sixth Circuit in *Jackson* instead found that the plaintiffs could not bring a viable claim for fraudulent denial of workers' compensation under RICO.  *Id.*  (opining that allowing the RICO claim in this realm could supplant the "Michigan's workers' compensation regime," which

is an administratively distinct forum from federal courts.). Further, as Plaintiffs' note, other circuits have interpreted the mail fraud statute to find that a defendant may be criminally liable for fraudulently underreporting payment obligations via mailings. *See Porcelli v. United States*, 303 F.3d 452, 457 (2d Cir. 2002). Therefore, Plaintiffs have sufficiently demonstrated that the facts contained in Count I constitute RICO predicate acts.

As to Plaintiffs' second count under RICO, Defendants assert that Plaintiffs are attempting to use violations of state anti-tampering laws, which are misdemeanors and do not qualify as "racketeering activity," as the Defendants' predicate RICO offense. *See* Mich. Comp. Laws §§ 324.6535, 324.6537. Plaintiffs respond by stating that their second count intends to allege that "Defendants utilized wire fraud to conceal their emissions control scheme and defraud the IRS by misrepresenting their income," citing to Plaintiff Redenciuc's affidavit as support. ECF No. 12, PageID.303. Plaintiffs' Complaint on its face, however, fails to plead the wire fraud statute. *See* ECF No. 1, PageID.14-15. The Complaint also does not identify how the state statutes fall under RICO's definition of "racketeering activity" if violation of the state laws is not "punishable by imprisonment for more than one year." 18 U.S.C. § 1961; *compare with* Mich. Comp. Laws § 324.6537 ("a person who violates section . . . 6535 . . . is guilty of a misdemeanor."). Plaintiffs have thus failed to establish separate RICO predicate acts for Count II as required at this stage

of the litigation.  Plaintiffs will be granted leave to file an amended complaint to address its deficiencies in Count II.

### E.  Unjust Enrichment, Promissory Estoppel, Conversion (Counts IV-VI)

Additionally, Defendants move to dismiss Plaintiffs' claims for unjust enrichment, promissory estoppel, and conversion, arguing that Plaintiffs' allegations are premised upon the existence of express contracts governing the same subject matter.  *See* ECF No. 10-1, PageID.234.  In response, Plaintiffs clarify that these three claims are pled in the alternative, as permitted by Federal Rule of Civil Procedure 8.  Fed. R. Civ. P. 8(d)(2).

Rule 8 provides that a party:

> may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

*Id.*  Plaintiffs contend that these claims were pled in the alternative because there is a dispute whether an express agreement exists between the parties.  As support for their argument, Plaintiffs cite to Defendants' Answer to the Complaint, filed on January 2, 2020.  *See* ECF No. 7.  In the Answer, Defendants respond to Plaintiffs' statement affirming the existence of a contract by stating "Defendants deny the allegations as pleaded in this sentence because these are untrue."  *Id.* at PageID.60.  Defendants go on to state that the individual Plaintiffs were never parties

to any contracts, including Rendenciuc's Agreement that is attached to the Complaint as Exhibit A. *See* ECF No. 1, PageID.26. The language used by Defendants suggests that they dispute the individual Plaintiffs' standing; it is not clear whether Defendants also dispute the existence of the underlying contracts governing Plaintiffs' employment altogether. *See* ECF No. 7, PageID.60.

The Sixth Circuit's analysis in *Solo* is instructive in the determination of the instant matter. *Solo*, 819 F.3d at 796. In *Solo*, the Sixth Circuit found that the plaintiff may proceed with its unjust enrichment claim in the alternative, even though it also proceeded under a breach of contract claim. *Id.* The Sixth Circuit consequently found that the unjust enrichment claim was not precluded by the breach of contract claim because it was unclear whether the defendant would later deny the existence of a contract. *Id.*

Here, as in *Solo*, Plaintiffs' claims for unjust enrichment, promissory estoppel, and conversion cannot be determined at this phase of the litigation. This Court understands that "it would be improper to prematurely conclude that [Defendants] will not dispute this allegation in subsequent stages of the proceedings," as evidenced by the language included in Defendants' Answer. *Id.* (additional citations omitted); *compare with Iverson Indus., Inc. v. Metal Mgmt. Ohio, Inc.*, 525 F. Supp. 2d 911, 922 (E.D. Mich. 2007) (finding that the plaintiff's unjust enrichment claim

could not survive summary judgment because there was no dispute as to the existence of an express contract covering the subject matter.).

If Defendants, in accordance with this Court's order on the dismissal motion, proceed with an argument that express contracts existed pertaining to the exact subject matter of this dispute, Plaintiffs' claims in the alternative will no longer be viable.  Until then, however, Defendants' Answer does not clearly indicate that it has abandoned an argument disputing the existence of express contracts. Accordingly, Plaintiffs have properly pled its alternative claims for unjust enrichment, promissory estoppel, and conversion.

## V. CONCLUSION

For the reasons discussed herein, the Court will **DENY WITHOUT PREJUDICE** Defendants' Motion to Dismiss Count II.  Plaintiffs will be allowed to amend Count II to correct the deficiencies identified by the Court.  If Defendants still believe Count II is deficient after the amendment, they may renew their Motion to Dismiss that Count.  The Court will **DENY** the Motion as to all remaining Counts (I, III-VI).

**IT IS SO ORDERED.**

s/Gershwin A. Drain_____
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  October 15, 2020

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 15, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager