UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Mirela Uselmann, d/b/a Sapphire
Trucking, Inc., et al.,

Plaintiffs,                                  Case No. 19-cv-13652

v.                                           U.S. District Court Judge
                                             Gershwin A. Drain

Razvan Pop, et al.,

Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#63]**

**I. Introduction**

On October 23, 2020, Plaintiffs Mirela Uselmann, Gabriel Biclea, Ion Gutu,

and Dumitru Marius Rendenciuc, (collectively, "Plaintiffs"), filed their First

Amended Class Action Complaint against Defendants Razvan Pop, Maria Pop, RSP

Express Inc., and NA Truck Repair, LLC, (the "Defendants"). ECF No. 19,

PageID.546. Plaintiffs allege Defendants engaged in a RICO, 18 U.S.C. § 1964, *et

seq.* fraud scheme that siphoned millions of dollars from Plaintiffs' share of contract

proceeds. They also allege state law claims for breach of contract, unjust

enrichment, conversion, and promissory estoppel.

1

Presently before the Court is Defendants' March 18, 2022, Motion for Summary Judgment [#63].  Plaintiffs filed a Response in Opposition on April 8, 2022.  ECF No. 64, PageID.2670.  Defendants submitted a Reply brief on April 22, 2022.  ECF No. 67, PageID.2773.

Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the disposition of this matter.  Accordingly, the Court will resolve Defendants' motion on the briefs.  *See* E.D. Mich. L. R. 7.1(f)(2).  For the reasons set forth below, the Court will GRANT IN PART and DENY IN PART Defendants' Motion for Summary Judgment [#63].

## II. BACKGROUND

Plaintiffs are independent truck owner-operators who contracted with Defendant RSP to transport freight for third-party shippers between 2006 and 2015.  *See Uselmann v. Pop*, 495 F. Supp. 3d 528, 532 (E.D. Mich. 2020).  RSP is a transportation provider that handles third-party businesses' transportation needs to move goods across the United States and Canada.  These third-parties paid RSP directly for each freight delivery.  *Id.*  RSP then contracted with truck owner-operators to transport the third-parties' haul.

Pursuant to the contracts between owner-operators and RSP (the "Agreements"), the owner-operators agreed to receive "a sum equal to 80 (%)

2

percent of the gross revenues (after allowable deductions as provided herein)," from RSP. *See* ECF No. 42-3. Gross revenue was "the amount that the customer agre[ed] to pay RSP for a shipment, load." ECF No. 48-7, PageID.1538. The Agreements entitled RSP to twenty percent of gross revenues third-party shippers paid for each transport, with the remaining eighty percent going to the owner-operators. *Uselmann*, 495 F. Supp. 3d at 532.

When a freight job became available, RSP dispatchers assigned the work to an owner-operator. ECF No. 48-7, PageID.1539. The dispatcher explained the job's details, including what the route, pickup and drop-off times, and payment amount were. *Id.* The payment amount was "the gross" revenue that "the owner operator [wa]s being paid 80 percent of." *Id.* at PageID.1534. The gross revenue amount RSP dispatchers disclosed to the owner-operators was not based on the actual third-party payments made to RSP, but rather an amount Defendant Razvan Pop advised the dispatchers to disclose. *Id.* at PageID.1542. Dispatchers never disclosed to the owner-operators the real amounts third-parties paid RSP. *Id.* at PageID.1529.

RSP mailed Driver/Contractor Settlement statements (the "Settlement Statements"), to Plaintiffs once they completed a freight job. *Id.* These Settlement Statements purportedly represented the gross revenue from each transaction between third-party customers and RSP. *Id.* The Settlement Statements are the source of the alleged fraud underlying this action.

3

Plaintiffs contend that RSP "never disclosed the *actual* amount" third-parties paid them in the Settlement Statements.  ECF No. 19, PageID.547 (emphasis added).  According to Plaintiffs, the Settlement Statements RSP provided represented a fraction of the gross revenue RSP received.  Plaintiffs charge Defendants with violating the Agreements by understating the gross revenue from transactions between RSP and third-parties, then pocketing the difference for themselves.  *Id.*  This practice ceased in 2015, Plaintiffs state, when Defendants changed their contract arrangements with truck owner-operators.  *Id.*

In December 2017, Plaintiff Biclea first realized RSP may have defrauded him by making misrepresentations in its Settlement Statements.   ECF No. 42-11, PageID.1309.   Around December 4, 2017, another owner-operator, non-party Valentin Ghira, asked Biclea to compare Settlement Statements for loads prior to 2015.   *Id.*   The two men realized that their compensation pursuant to their Agreements did not reflect the Settlement Statements' gross revenue amounts.  *Id.*  Biclea investigated the discrepancy on January 3, 2018, when he learned about another owner-operator's lawsuit against RSP premised on an Agreement breach.  *Id.*  Biclea claims on that day, he learned RSP "had been skimming money off of the 80% that the drivers were entitled to" under the Agreements.  *Id.* at PageID.1310.  Biclea shared his findings with Plaintiff Rendenciuc later that spring of 2018, *id.*,

who discussed the matter with other named Plaintiffs.  ECF No. 42-8, PageID.1291; ECF No. 42-9, PageID.1300.

Plaintiffs commenced this action in December 2019, with a Class Action Complaint, *see* ECF No. 1.  Defendants moved to dismiss the Complaint on January 21, 2020, ECF No. 8, and a hearing was later held on July 13, 2020.  This Court issued an opinion and order on October 15, 2020, denying Defendants' Motion to Dismiss all counts.  *Uselmann*, 495 F. Supp. 3d at 541.  Plaintiffs filed their Amended Complaint eight days later.  *See* ECF No. 19.  The Court subsequently denied Defendants' Motion for Reconsideration of that opinion on May 4, 2021.  *See* ECF No. 28.  Defendants submitted their Motion for Summary Judgment [#63] on March 18, 2022.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56 permits parties to file a motion for summary judgment when a claim, counterclaim, or crossclaim is asserted against them. Fed. R. Civ. P. 56(b).  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986).  "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  In doing so, the Court "draw[s] all reasonable inferences and view[s] the evidence in the light most favorable to the [nonmovant]" to determine whether a genuine dispute of material fact exists.  *Henschel v. Clare Cty. Rd. Comm'n*, 737 F.3d 1017, 1022 (6th Cir. 2013).

## IV. DISCUSSION

Defendants seek summary judgment on each Count in Plaintiffs' Amended Complaint.  First, Defendants recycle their argument that Plaintiffs lack standing.  Second, Defendants reargue that the statute of limitations have run on Count I and Counts III through VI.  Third, Defendants claim entitlement to summary judgment on Counts II and III because no genuine issue of material fact remains supporting Plaintiffs' RICO claims.  Fourth, Defendants again argue that Plaintiffs cannot plead

Counts IV through VI in the alternative.  Defendants conclude that Plaintiff's conversion claim fails as a matter of law.  The Court addresses each argument below.

### A. Standing

Article III, § 2 of the United States Constitution extends the judicial power of the United States "only to 'Cases' and 'Controversies.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting U.S. Const. Art. III, § 2).  Standing is a jurisdictional requirement, *Coal Operators & Assocs., Inc. v. Babbit*, 291 F.3d 912, 915 (6th Cir. 2002), which "ensure[s] that federal courts do not exceed their authority" and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo*, 136 S. Ct. at 1547.  "[T]here is no case or controversy if the plaintiff lacks standing to sue." *Duncan v. Muzyn*, 885 F.3d 422, 427 (6th Cir. 2018).  This Court therefore lacks subject matter jurisdiction over matters brought by plaintiffs without standing.  *See Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017).

Plaintiffs must establish three factors to satisfy the "irreducible constitutional minimum" for standing: (1) a concrete and particular injury; (2) that Defendants caused, and (3) that the Court can redress.  *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61 (1992).  "A claimant bears the burden of establishing standing and must show it 'for each claim [they] seek to press.'" *Hagy v. Demers & Adams*, 882 F.3d

616, 620 (6th Cir. 2018) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).  The court must dismiss a complaint under Rule 12(b)(1) if a claimant fails to establish standing.  *Turaani v. Sessions*, 316 F. Supp. 3d 998, 1007 (E.D. Mich. 2018) (citing *Lyshe*, 854 F.3d at 858).

Defendants argue the named Plaintiffs lack standing because the Agreements allegedly breached were between Defendants and Plaintiffs' companies, not the individual Plaintiffs themselves.   ECF No. 63, PageID.2402.   According to Defendants, no named Defendant had a contract with a named Plaintiff.

The Court addressed this very same argument in its October 15, 2020 opinion and order.  There, the undersigned observed that Rendenciuc's Agreement named both his company and his name.  *Uselmann*, 495 F. Supp. 3d at 534.  Plaintiffs represented at an earlier hearing that three other Agreements followed this pattern. *Id.*  Naming both the individual Plaintiffs and their companies illustrated "how closely linked the individuals and companies were," such that the named Plaintiffs' injuries are identical to those of their companies' injuries.  *Id.*

The Court continues to find that Plaintiffs have adequately demonstrated standing.  Since discovery opened, Plaintiffs identified more Agreements containing both an individual owner-contractor and their company as signed parties.  *See generally* ECF No. 42-3.  These Agreements strengthen Plaintiffs' position that individual Plaintiffs and their companies are inextricably linked for standing

purposes. Individual Plaintiffs also stated in their depositions that the Agreements were between themselves and RSP. *See, e.g.*, ECF No. 64-6, PageID.2737 (understanding "[t]he agreement was between" Biclea and Defendants); ECF No. 64-6, PageID.2723 (describing Gutu's company "and [him]self" as "practically the same thing."). At the very least, as signatories to the Agreements, Plaintiffs are parties of interest. Thus, the evidence viewed in the light most favorable to the non-moving party demonstrates the Plaintiffs meet the constitutional minimum threshold to establish standing.

Defendants rely on *Warren v. Mfrs. Nat'l Bank of Detroit*, 759 F.2d 542, 544 (6th Cir. 1994), which held that a plaintiff lacked standing to sue in his individual capacity as his company's creditor, sole shareholder, and chairman of the board. But *Warren* is distinguishable from the present dispute. The plaintiff there alleged injuries different from those the company suffered. *Id.* at 544–45. Here, Plaintiffs' injuries mirror their companies' injuries. Moreover, as the Court previously recognized, individuals can bring civil RICO suits if the predicate acts injured either their business or property. *Uselmann*, 495 F. Supp. 3d at 534 (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495 (1985) ("If the defendant engages in a pattern of racketeering activity … and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c).")). Considered collectively, individual Plaintiffs present sufficient evidence for the Court to find

they have standing.  The Court therefore declines to grant summary judgment in Defendants' favor based on a lack of standing.

## B. Statute of Limitations

Next, Defendants contend Count I, and Counts III through VI are time barred by their applicable statute of limitations.  Plaintiffs state that Defendants fraudulent concealment of their "price skimming" scheme tolled the statute of limitations on each claim, making each timely.  At a minimum, Plaintiffs aver, a question of fact exists as to whether Defendants fraudulently concealed their alleged scheme.

Count I of Plaintiffs' Amended Complaint is their RICO claim, which carries a four-year statute of limitations.  *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987).  "The four-year period begins to run when a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation."  *Sims v. Ohio Cas. Ins. Co.*, 151 F. App'x 433, 435 (6th Cir. 2005) (citing *Rotella v. Wood*, 528 U.S. 549, 553–55 (2000)).  Count III of the Amended Complaint is Plaintiff's breach of contract claim, which carries a six-year limitations period because Plaintiffs seek monetary damages.  Mich. Comp. Laws § 600.5807(9).  Plaintiffs' quasi-contract claims of promissory estoppel and unjust enrichment carry a six-year limitations period as well.  *Id.*  Count VI of Plaintiffs' Amended Complaint—conversion—is subject to a three-year statute of limitations.  *Tillman v. Great Lakes Truck Ctr., Inc.*, 277 Mich. App. 47,

49, 742 N.W.2d 622, 623 (2007).  Where a defendant fraudulently concealed the existence of a claim, a plaintiff's action "may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim … although the action would otherwise be barred by the period of limitations."  Mich. Comp. Laws § 600.5855.

The Court declines to find that the statute of limitations has expired on each of Plaintiffs' claims.  A question of fact exists as to whether Defendants fraudulently concealed the existence of Plaintiffs' claims.  Defendants argue that Plaintiffs could "obtain and review records applicable" to their claims by January 1, 2015, but "did not exercise this right."  ECF No. 63, PageID.2407–08.  But Plaintiffs dispute knowing about their claims because Defendants tried concealing them.  As the Court previously observed: "If true, these misrepresentations prevented Plaintiffs from knowing, or even suspecting, that they were not receiving their owed compensation under the Agreements for many years."  *Uselmann*, 495 F. Supp. 3d at 535. Plaintiffs' claims would not begin to accrue until January 3, 2018, when Biclea first suspected Defendants defrauded him.  ECF No. 42-11, PageID.1309.  Biclea then shared his knowledge of the suspected fraud with Rendenciuc around April or May 2018.  *Id.* at PageID.1310.  Because Plaintiffs filed suit in December of 2019, their claims would be timely brought under Mich. Comp. Laws § 600.5855 if Defendants concealed them.

The parties dispute whether Defendants fraudulently concealed Plaintiffs' claims. Citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187–91 (1997), Defendants argue a reasonably diligent RICO claimant cannot rely on a claim of fraudulent concealment to toll the statute of limitations. ECF No. 67, PageID.2779. But as Plaintiffs correctly note, and as this Court already explained, the "injury discovery rule" from *Rotella* guides our analysis of Plaintiffs' RICO claims. *See Uselmann*, 495 F. Supp. 3d at 535 (citing *Rotella*, 528 U.S. at 553–55). Courts apply the discovery rule when, "due to facts and circumstances not within [their] control," plaintiffs had no knowledge that an injury occurred. *Univ. of Pittsburgh v. Townsend*, 542 F.3d 513, 527 (6th Cir. 2008). Plaintiffs here argue that RSP providing false gross revenue amounts from third-party transactions concealed their injury, thus implicating the injury discovery rule. Their deposition testimony and declarations alone present sufficient evidence from which a reasonable jury could find fraud occurred.

Defendants cite no authority suggesting *Rotella* is bad law. Accordingly, Defendants are not entitled to summary judgment on statute of limitations grounds.

### C. The RICO Claims – Counts I and II

Next, Defendants argue no dispute of material fact exists to suggest that Defendants RSP and NA Truck Repair violated 18 U.S.C. § 1341, the mail fraud statute, or any other RICO predicate act. "As part of RICO's extensive civil

enforcement scheme, Congress included 18 U.S.C. § 1964(c) which allows for private suits for treble damages and attorneys' fees to '[a]ny person injured in his business or property by reason of a violation of section 1962[.]" *See Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 154 (6th Cir. 1990) (quoting 18 U.S.C. § 1964(c)). Injured plaintiffs must allege that defendants engaged in a "pattern of racketeering activity" through the repeated commission of predicate acts. See 18 U.S.C. § 1962. The predicate acts at issue here are mail and wire fraud. 18 U.S.C. § 1961(1).

Mail and wire fraud have similar elements: "first, that the defendant devised or willfully participated in a scheme to defraud; second, that he used or caused to be used an interstate wire communication or the United States mail in furtherance of the scheme; and third, that he intended to deprive a victim of money or property." *United States v. Maddux*, 917 F.3d 437, 443 (6th Cir. 2019) (quoting *United States v. Faulkenberry*, 614 F.3d 573, 584 (6th Cir. 2010)) (internal citations omitted). Defendants' arguments goes to the first element—whether they participated in a fraud scheme. "A scheme to defraud is any plan or course of action by which someone intends to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises." *Faulkenberry*, 614 F.3d at 581.

The Court finds that Plaintiffs present sufficient evidence to present their RICO claim to a jury on Count I. Plaintiffs allege Defendants defrauded owner-

operators for a decade by mailing Settlement Statements to owner-operators that contained false information, and then profited off that misrepresentation.  ECF No. 19, PageID.556–57.  Defendants profited off these misrepresentations by keeping profits to themselves that the owner-operators were otherwise entitled to under their Agreements' terms.  Id.  These allegations adequately plead "a scheme … for obtaining money or property by means of false … representations[] or promises" under the mail fraud statute.  18 U.S.C. § 1341.

Since the Court upheld Plaintiff's Count I RICO claim under Rule 12(b)(6), additional evidence has been discovered that supports Plaintiffs' claim.  For example, RSP employee Marinescu provided deposition testimony that could lead a reasonable jury to believe Defendants orchestrated a fraud scheme.  *See* ECF No. 48-7.  She discussed how Razvan instructed dispatchers to provide owner-operators payment amounts different than the actual gross revenue amount stipulated to in the Agreements.   Plaintiffs also suggest RSP's financial records evidence how Defendants shorted owner-operators millions of dollars between 2012 and 2014.  ECF No. 64, PageID.2691.  Additionally, Gutu stated in an earlier declaration that he asked Defendant Razvan Pop for documentation to confirm that their Agreement was being followed.   ECF No. 12, PageID.323–24.  Gutu alleges that Razvan showed him documents indicating that the Agreement remained upheld, despite the

truth being obfuscated.  *Id.*  Considered collectively, a reasonable jury could conclude that Defendants engaged in mail fraud.

Defendants suggest that Plaintiffs' RICO claims are unactionable because Defendants did not dispossess Plaintiffs of money previously in their possession. ECF No. 63, PageID.2410–11 (citing *Cleveland v. United States*, 531 U.S. 12 (2000)).  But the Sixth Circuit has recognized the "right to be paid" as a property right.  *Maddux*, 917 F.3d at 444 (quoting *Pasquantino v. United States*, 544 U.S. 349, 357 (2005)).  In *Maddux*, the Government charged criminal defendants with conspiracy to commit mail or wire fraud, among other crimes, for "part[aking] in a decade-long scheme … to sell tax-free cigarettes," which defrauded "federal, state, and local governments" of their tax revenue.  917 F.3d at 441.  The *Maddux* defendants made the same argument as Defendants here: that no property right exists in an entitlement to collect money.  *Id.* at 444.  The Sixth Circuit rejected this argument, and the defendants' reliance on *Cleveland*, because "there was no suggestion … that the defendant aimed at depriving the [plaintiff] of any money" in that case. *Id.* (quoting *Pasquantino*, 544 U.S. at 357) (alterations adopted).  Because *Maddux* is not limited to a "government's entitlement to excise taxes[,]" the Court finds *Cleveland* distinguishable from this action.  *Id.*

Defendant NA Truck Repairs also seeks summary judgment from Count II of the Amended Complaint.  The Court previously granted Plaintiffs leave to amend

15

Count II because they "failed to establish separate RICO predicate acts for Count II" that qualify as racketeering activity. *Uselmann*, 495 F. Supp. 3d at 539. Racketeering activity cannot include violations of state law not "punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A). Violations of the two Michigan statutes Plaintiffs rely on—Mich. Comp. Laws § 324.6535, 324.6537—are not punishable by a term of imprisonment over a year. Mich. Comp. Laws § 324.6537 ("a person who violates section … 6535 … is guilty of a misdemeanor.") After the Court granted Plaintiffs leave to amend their Complaint, Plaintiffs kept the original state law violations as a basis for their Count II RICO claim. Plaintiffs also do not respond to Defendants' argument that Count II of the Amended Complaint fails as a matter of law. *See Eid v. Wayne State Univ.*, No. 20-cv-11718, 2022 U.S. Dist. LEXIS 72471, at *42–43 (E.D. Mich. Apr. 20, 2022) (quoting *Degolia v. Kenton Cty.*, 381 F. Supp. 3d 740, 759–60 (E.D. Ky. 2019) ("It is well understood … that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (alterations adopted)). Accordingly, the Court finds NA Trucking Repairs is entitled to summary judgment on Count II of Plaintiffs' Amended Complaint.

### D. The Court Counts IV – VI Plead in the Alternative

Defendants argue that at the close of discovery, Plaintiffs can no longer plead Counts IV through VI of their Amended Complaint in the alternative.  Plaintiffs posit that until Defendants concede Plaintiffs are parties to the Agreements, or otherwise third-party beneficiaries to Defendants' contracts, it can continue pleading Counts IV through VI in the alternative.  ECF No. 64, PageID.2698.

Federal Rule of Civil Procedure 8 permits parties to plead claims in the alternative.  *See Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 796 (6th Cir. 2016). Only where "there is doubt as to the existence of a contract" can parties proceed in this manner.  *See Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 32 F. Supp. 3d 824, 834 (E.D. Mich. 2014); *see also Glob. Crossing Telecomms., Inc. v. Mich. Bell. Telephone Co.*, No. 09-14686, 2010 U.S. Dist. LEXIS 48305, at *14 (E.D. Mich. May 17, 2010) ("[A]n action for unjust enrichment can only lie where no express contract exists covering the same subject matter between the parties").  When parties agree a contract exists, "[c]ourts have regularly rejected plaintiffs' attempts to plead an unjust enrichment claim in the alternative."  *See In re G.M. Air Conditioning Mktg. and Sales Practices Litig.*, 406 F. Supp. 3d 618, 635 (E.D. Mich. 2019); *see also Glob. Crossing Telecomms.*, 2010 U.S. Dist. LEXIS 48305, at *4 (collecting cases).

The Court finds Defendants are not entitled to summary judgment on Plaintiffs state law claims of unjust enrichment, promissory estoppel, and

conversion.  As discussed *supra*, Section III.A.2.a., Plaintiffs and Defendants were parties to the Agreements.   Plaintiffs originally pled Counts IV through VI in the alternative to their breach of contract claim because Defendants argued Plaintiffs' were not parties to the Agreements.  Defendants still dispute that the contracts were between them and individual Plaintiffs.   While "[t]here is no claim for unjust enrichment when there exists a valid contract covering the same subject matter," *Iverson Indus. v. Metal Mgmt. Ohio, Inc.*, 525 F. Supp. 2d 911, 922 (E.D. Mich. 2007), the parties disagree over whether contracts existed here.

Plaintiffs can proceed to argue conflicting theories of relief before a jury when parties dispute a contract's existence.  *See Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 181–82 (6th Cir. 1996) (reinstating claims of promissory estoppel and unjust enrichment where a contract's existence was disputed at summary judgment); *see also In re King Enterprises, Inc.*, 678 F.2d 73, 76–77 (8th Cir. 1982).   Rule 8(a)(3) allows parties to seek "relief in the alternative" under conflicting claims.  Fed. R. Civ. P. 8(a)(3).  The Sixth Circuit allows "plaintiff[s] to proceed under both breach of contract and unjust enrichment theories" until the question concerning a contract's existence is resolved.  *See Solo*, 819 F.3d at 788. That question falls in the province of a jury given the factual disputes at issue.  The

Court therefore denies Defendants' summary judgment from Counts IV through VI of Plaintiffs' Amended Complaint.[1]

### E. Judicial Estoppel

Finally, Defendants argue that Biclea is judicially estopped from litigating this case for failing to disclose this lawsuit in his bankruptcy petition. ECF No. 63, PageID.2399 (citing *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010)). Defendants suggest the doctrine of judicial estoppel precludes Biclea from prosecuting this action when he did not previously disclose it to the bankruptcy court. ECF No. 63, PageID.2400–01. Plaintiffs do not dispute that Biclea failed to disclose this action in his bankruptcy proceeding. However, Plaintiffs contend that Biclea's failure to disclose was an excusable mistake.

Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in

---

[1] Defendants also move for summary judgment from Plaintiffs' statutory conversion claim specifically. ECF No. 63, PageID.2413–14. Conversion occurs when someone either "steal[s] or embezzle[es] property or convert[s] property to the other person's own use" or "possess[es], conceal[s], or aid[s] in the concealment of stolen, embezzled, or converted property" knowingly. Mich. Comp. Laws § 600.2919a. Plaintiffs allege Defendants knowingly possessed and concealed property belonging to individual Plaintiffs. The evidence discussed *supra*, Section IV.A.2.b., concerning Marinescu's deposition testimony, supports the allegations of Defendants' alleged fraud scheme. That evidence is collaborated by named Plaintiffs' testimony as well. The Court declines to award Defendants' summary judgment from Count VI of Plaintiffs' Amended Complaint because disputes of material fact exist that a jury should resolve.

another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).  "The purpose of judicial estoppel is 'to protect the integrity of the judicial process,' and 'prevent improper use of judicial machinery.'" *See Sinkfield v. State Farm Ins.*, 580 F. App'x 323, 325 (6th Cir. 2014) (quoting *New Hampshire*, 532 U.S. at 749).  In the bankruptcy proceeding context, "if a party fails to disclose the existence of a claim … that party might be estopped from prosecuting that claim after the bankruptcy has come to a close." *Id.* (citing *White*, 617 F.3d at 478–79).  Courts employ judicial estoppel "with caution[,]" but have found it warranted where a Plaintiff "fail[s] to include the potential claim against Defendant as a potential asset in its [] bankruptcy adjudication[.]" *Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 897 (6th Cir. 2004).

In *White*, a district court judicially estopped a plaintiff from pursuing a claim that she failed to disclose in her initial bankruptcy filings.  617 F.3d at 475.  In determining whether the plaintiff's conduct stemmed from a mistake, the court laid out a three-prong test, that the Sixth Circuit later clarified:

> To support a finding of judicial estoppel, we must find that: (1) the plaintiff[] assumed a position that was contrary to the one that he asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) the omission did not result from mistake or inadvertence.  In determining whether the plaintiff's conduct resulted from mistake or inadvertence, this court considers whether: (1) he lacked knowledge of the factual basis of the undisclosed claims; (2) he had a motive for concealment; and (3) the evidence indicates an absence of bad faith.

*Stephenson v. Malloy*, 700 F.3d 265, 272–73 (6th Cir. 2012) (quoting White, 617 F.3d at 478) (alterations adopted).

The Court declines to judicially estop Biclea from pursuing his claims in this action.  The parties dispute whether Biclea's failure to disclose this case to the bankruptcy court resulted from mistake or inadvertence.  Plaintiffs state that Biclea approached his bankruptcy estate's trustee "to rectify his simple misunderstanding" about the disclosure requirement.  ECF No. 64-3, PageID.2708.  Relying on Eubanks, Plaintiffs aver that "a trustee's knowledge of the claim precludes the application of judicial estoppel since the plaintiff was obviously not trying to defraud the court if they placed the trustee on notice."  385 F.3d at 898 n.1.  Additionally, English is Biclea's second language, which lends support to Plaintiffs' argument that his confusion about the disclosure requirement was a mistake.  Biclea also claims uncertainty about whether the lawsuit would produce monetary relief led him to believe his claims were not an asset.  Defendants also do not discuss their opposition to Biclea's continued involvement in this action in their Reply brief.  Accordingly, the Court declines to apply the doctrine of judicial estoppel against Biclea.

## V. CONCLUSION

For the reasons discussed herein, Defendants' Motion for Summary Judgment [#63] is **GRANTED IN PART AND DENIED IN PART.**

Defendants' Motion for Summary Judgment is **GRANTED** as to Count II of the Amended Complaint.

Defendants' Motion for Summary Judgment is **DENIED** as to Counts I, III, IV, V, and VI of the Amended Complaint.

**IT IS SO ORDERED.**


Dated:  September 29, 2022          /s/ Gershwin A. Drain
                                   GERSHWIN A. DRAIN
                                   UNITED STATES DISTRICT JUDGE


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 29, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager