UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIRELA USELMANN, D/B/A SAPPHIRE
TRUCKING, INC., ET AL.,

Plaintiffs,                              Case No. 19-cv-13652

v.                                       U.S. DISTRICT COURT JUDGE
                                         GERSHWIN A. DRAIN
RAZVAN POP, ET AL.,

Defendants.

_____/

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [ECF NO. 42]

### I. INTRODUCTION

Before the Court is Plaintiffs' Motion for Class Certification [ECF No. 42]. They seek to certify a class of: "All owner-operators who contracted with Defendants from January 1, 2010, to January 1, 2020[,]" pursuant to Fed. R. Civ. P. 23(a)-(b) ("Rule 23"). [ECF No. 42, PageID.1143].

The putative class seeks to have Plaintiffs' counsel Bruce Miller of Miller Cohen P.L.C to serve as class counsel under Fed. R. Civ. P. 23(g). [Id]. They appoint named Plaintiffs Mirela Uselmann d/b/a Sapphire Trucking, Inc.; Gabriel Biclea d/b/a MB Trucking, Inc.; Ion Gutu d/b/a GPA Trucking, Inc.; and Dumitru Marius Rendenciuc d/b/a DMR Express, Inc. as class representatives.

Plaintiffs filed their Motion to Certify Class on November 18, 2021. Defendants responded on January 13, 2022, and Plaintiffs filed a reply on January 27, 2022. The Court heard oral argument on September 22, 2022.

On November 14, 2022, the Court ordered Plaintiffs to file supplemental briefing and address the issue: whether the class is certifiable under Fed. R. Civ. P. 23(b)(3). Plaintiffs filed the supplemental brief on November 21, 2022. Defendants responded on November 29, 2022, and Plaintiffs filed a reply on December 5, 2022. The Motion for Class Certification is now fully briefed.

For the following reasons, the Court **GRANTS** Plaintiffs' Motion and **CERTIFIES** the class under Fed. R. Civ. P. 23(a) and (b)(3).

**IT IS FURTHER ORDERED** that the Court modifies the class definition to include all owner-operators who contracted with Defendants from January 1, 2011, to January 1, 2015.

## II. BACKGROUND

Plaintiffs' Amended Complaint alleges that Razvan Pop ("Pop"), Maria Pop, RSP Express Inc. ("RSP"), and NA Truck Repair, LLC, ("NA") (Collectively "Defendants") engaged in two counts ("count I" and "count II") of civil violations under the Racketeering Influenced Corrupt Organization Act ("RICO"), 18 U.S.C. § 1964 (c), et seq. Plaintiffs say Defendants cheated them out of millions of dollars of contract proceeds through systematic fraud.

Plaintiffs also allege state law claims for breach of contract ("count III"), unjust enrichment ("count IV"), promissory estoppel ("count V"), and conversion ("count VI"). The Court previously granted Defendants' motion for summary judgment on count II. [see ECF No. 75]. Only count I and counts III-VI remain. Plaintiffs seek monetary damages as their sole remedy.

The factual background of this case is detailed in the Court's Opinion and Order Granting in Part and Denying In Part Defendants' Motion for Summary Judgment. [ECF No. 75, PageID.2796- 2800]. The Court incorporates it by reference and will only discuss the facts most pertinent to Plaintiffs' motion for class certification.

Plaintiffs say the Defendant companies are part of a family of businesses owned or operated by Defendants Razvan Pop and Maria Pop, which each have a separate and distinct relationship to the fraud enterprise. [ECF No. 42, PageID.1159].

Plaintiffs are independent truck owner-operators who contracted with Defendant RSP to transport freight for third-party shippers between 2006 and 2015. *See Uselmann v. Pop*, 495 F. Supp. 3d 528, 532 (E.D. Mich. 2020). RSP is a transportation provider that handles third-party businesses' transportation needs to move goods across the United States and Canada.

As the allegedly fraudulent scheme goes, these third-parties paid RSP directly for each freight delivery. *Id*. RSP then contracted with Plaintiffs—who are all truck owner-operators—to transport the third parties' haul. [ECF No. 14-1, PageID.406-420]. Plaintiffs say they are aware of at least sixty owner-operators with nearly identical agreements from 2011-2015. [ECF No. 42, PageID.1156-57].

Pursuant to the contracts between owner-operators and RSP (the "Agreements"), the owner-operators agreed to receive "a sum equal to 80 (%) percent of the gross revenues" from RSP in exchange for each of the owner-operators agreeing to transport exclusively for Defendants. [See ECF No. 42-3]. Based on the agreements produced, some of the owner-operators appear to have contracted for 70 or 75%. Ms. Marinescu, an RSP management staff member, testified explicitly in a deposition that the terms of the Agreements were non modifiable. [ECF No. 49-2, PageID.1603]. The Agreements had provisions that read,

> No interpretation, change, or waiver or(sic) any of the provisions hereof shall be binding upon the parties hereto unless mutually agreed to in writing and signed by both parties.

[ECF No. 49-6, PageID.1633].

The gross revenue was "the amount that the customer agre[ed] to pay RSP for a shipment load." [ECF No. 48-7, PageID.1538]. When a freight job became available, RSP dispatchers assigned it to an owner-operator. [ECF No. 48-7, PageID.1539]. The dispatcher explained the job's details, including the route, pickup

and drop-off times, and purported payment amount. *Id*. That payment amount was "the gross revenue" from which "the owner operator[s] [were] being paid 80 percent. . ." *Id*. at PageID.1534.

Plaintiffs say the gross revenue amount RSP dispatchers disclosed to the owner-operators was not based on the actual third-party payments made to RSP; it was based on an amount that Defendant Razvan Pop advised the dispatchers to disclose. *Id*. at PageID.1542. Dispatchers never disclosed to the owner-operators the actual amounts third-parties paid RSP. *Id*. at PageID.1529.

RSP mailed Driver/Contractor Settlement statements (the "Settlement Statements") to Plaintiffs once they completed a freight job. *Id*. These Settlement Statements also purportedly represented the gross revenue paid to RSP by third-party customers. *Id*. The Settlement Statements are the source of the alleged fraud underlying this action. According to Plaintiffs, the Settlement Statements represented a fraction of the actual gross revenue RSP received.

Plaintiffs accuse Defendants of violating the Agreements by understating the gross revenue from transactions between RSP and third parties, then pocketing the difference for themselves. *Id*. Plaintiffs deny any potential claims that the Agreements were modified to allow payment for less than the contract price, and they say this fraudulent scheme was followed uniformly in relation to all owner-operators. [ECF No. 19, PageID.547].

However, there is no dispute that this allegedly fraudulent arrangement ceased as late as the beginning of 2015. *Id*.

Plaintiffs rely on Defendants' own records to illustrate the amount of money lost due to the allegedly fraudulent enterprise. They say 2012-2014 Driver Payroll History and Fleet Revenue Reports from Dr. Dispatch—a computer program that Defendants used to record both accounts receivable and payroll—show that the invoice price (the actual gross revenue) significantly exceeded the revenue price on the Driver Payroll Records. The amounts on the Driver Payroll Records correspond to the amounts listed on the Settlement Statements.

Allegedly, 2012 owner-operators were shorted a total of $812,723.80; 2013 owner-operators were shorted $1,180,044.17; and 2014 owner-operators were shorted $1,876,205.68. Records for years 2011 and 2015 are purportedly still subject to discovery. Plaintiffs seek to recover these contract proceeds.

### III. LAW AND ANALYSIS

#### 1. Standard of Review

Class action lawsuits provide a vehicle by which similarly situated claimants can litigate their causes of action in a single judicial forum. As such, they are intended to promote judicial economy, efficiency in the adjudicatory process, and fairness to the participating claimants. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). To certify a class, the court must conduct a "rigorous analysis" to

determine whether a proposed class complies with the requirements of Rule 23. *In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*, 772 F.3d 838, 851 (6th Cir. 2013) (*citing In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)).

Fed. R. Civ. P. 23(a) imposes four prerequisites to class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.

These four requirements are intended to assure that the claims of the class as a whole fit within the contours of the class representatives' claims. *In re Whirlpool Corp.*, 772 F.3d at 850. The requirements limit the class claims to those fairly encompassed by named plaintiffs' claims. *Dukes*, 564 U.S. at 349. "[C]lass representatives must share the same interests and injury as the class members." *Id.*

Rule 23 requirements are more than "a mere pleading standard." *Dukes*, 564 U.S. at 350. "There must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079 (quoting *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974)). The party seeking class certification bears the burden of proof to satisfy Rule 23 certification requirements. *Id.* at 1079.

The district court maintains substantial discretion in determining whether to certify a class, as it possesses the inherent power to manage and control its own pending litigation." *Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 351 (6th Cir. 2011).

## 2.  Discussion

### A.  Fed. R. Civ. P. 23 (a)(i)-(iii)

#### i.  Numerosity

Under the numerosity requirement, the proposed class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Rather than apply "a strict numerical test for determining impracticability of joinder," *see Golden v. Columbus*, 404 F.3d 950, 965 (6th Cir. 2005), courts in the Sixth Circuit have recognized: "the numerosity requirement is fulfilled when the number of class members exceeds forty." *See Malam v. Adducci*, 475 F. Supp. 3d 271, 734 (E.D. Mich. July 31, 2020) (*quoting In re Wal-Mart ATM Fee Notice Litigation*, MDL No. 11-02234, 2015 U.S. Dist. LEXIS 148570, at *21 (W.D. Tenn. Nov. 3, 2015)); *see also Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001).

Concerns over judicial economy and the practicality of class members bringing individual lawsuits also guide a numerosity analysis. *See Barry v. Corrigan*, 79 F. Supp. 3d 712, 731 (E.D. Mich. 2015).

Among other things, courts also consider the difficulty of locating the class members, the size and complexity of the individual claims, the ability of the plaintiffs to commence separate actions, and the types of claims and relief sought. *Id*. *See also* Rule 23(a)(1).

Plaintiffs' motion proposes a class of "at least sixty owner-operators," which they claim "is sufficiently numerous" to make joinder impracticable. [ECF No. 42, PageID.1163]. At the time of oral argument on September 28, 2022, Plaintiffs say that number has increased to 150 class members.

Defendants argue joinder is not impracticable. Relying on *Anderson v. Weinert Enterprises, Inc.*, 986 F.3d 773, 777 (7th Cir. 2021), they say that, because most of the putative class members are from the eastern district of Michigan, they should be capable of litigating their own claims. [ECF No. 48-1, PageID.1395].

In *Anderson*, all but two members of the putative class consisting of 37 members lived within a 50-mile radius of the courthouse. *Id*. at 778. The Seventh Circuit concluded that joinder was not impracticable, reasoning that plaintiff presented no evidence to show that coordinating with the two out-of-state class members would present such difficulties that joinder of approximately 40 local employees of a small roofing company would be impracticable. *Id*. Lastly, the court noted, "[o]ur cases have recognized that a forty-member class is often sufficient to meet the numerosity requirement." *Id*. (emphasis in original).

Unlike *Anderson*, the putative class in this case is larger than 40 members. Ms. Marinescu, a former RSP express manager, testified that RSP had contracts with 60-70 owner-operators at "any one time" any given year. [ECF No. 49-2, PageID.1597]. Ms. Marinescu also testified about what Plaintiffs say was a common

scheme employed by Defendants to allegedly cheat all the putative class members out millions of dollars and fire 50 of them. [Id. at pageID.1598-99, 1601].

Unlike the plaintiffs in *Anderson* Plaintiffs in this case say that not all putative class members are residents of Michigan or live within 50 miles of the courthouse. Eight class members live either in Florida or Texas and the others reside in 34 different cities in Michigan. [ECF No. 49, PageID.1589]. Plaintiffs also say many of the putative class members do not work near the courthouse or within hundreds of miles of it because they are constantly traveling on roads extending to Mexico and Canada for work. [Id. at PageID.1589].

All these facts, in addition to the large number of total class members, suggest that joinder of individual lawsuits would be impracticable. Plaintiffs satisfy the numerosity requirement.

### ii.   Commonality and Typicality

Commonality requires the existence of "questions of law or fact common to the class."   Fed. R. Civ. P. 23(a)(2).   A question of law or fact satisfies the commonality requirement if it is "capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

Plaintiffs must meet two conditions to fulfill this requirement: (1) "show that there is a common question that will yield a common answer for the class (to be

resolved later at the merits stage),” and (2) “that [the] common answer relates to the actual theory of liability in the case.” *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015).

Courts agree that “[e]ven a single [common] question” is sufficient to satisfy Rule 23(a)(2). *See Hicks v. State Farm Fire and Cas. Co.*, 965 F.3d 452, 458 (6th Cir. 2020) (*quoting Dukes*, 564 U.S. at 359). The question whether the class “*can prove*—not that [they] have already shown—that all members of the class have suffered the ‘same injury.’” *See Rikos*, 799 F.3d at 505 (quoting *Dukes*, 564 U.S. at 350) (emphasis in original).

Similarly, typicality requires that “the claims . . . of the representative parties are typical of the claims . . . of the class.” Fed. R. Civ. P. 23(a)(3). “A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if [their] claims are based on the same legal theory.” *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). Courts “tend to merge” the typicality and commonality requirements of Rule 23(a). *Dukes*, 564 U.S. at 349 n.5.

The Court finds that Plaintiffs satisfy Rule 23(a)’s commonality and typicality requirements. All class members share the same legal and factual questions: whether Defendants defrauded owner-operators who signed Agreements with RSP, whether Defendants breached those agreements and converted contract proceeds by paying

the owner-operators a percentage of a fraudulent amount in gross revenue. [ECF No. 42, PageID.1165].

Plaintiffs say: (1) all the agreements had uniform—unmodifiable—terms, (2) Defendants mailed all owner-operators in the putative class Driver Settlement statements through the U.S. mail showing a fraudulent amount in gross revenue paid by third-party shippers, (3) Defendants paid Plaintiffs 70-80% of the fraudulent amount, and (4) Defendants engaged in fraudulent concealment with respect to all class members. [Id].

While some Agreements offered different profit amounts than others, Plaintiffs correctly note that varying amounts of damages do not defeat commonality when common issue of fact and law exist.  [ECF No. 42, PageID.1167] (*citing Fox v. Massey Ferguson, Inc*., 172 F.R.D. 653, 661-62 (E.D. Mich. 1995) (the commonality test was met where plaintiffs, although asserting claims under various agreements for "varying amounts of damages," all challenged the decision to alter retirement healthcare benefits)). *See also Cates v. Cooper Tire & Rubber Co*., 253 F.R.D. 422, 429 (N.D. Ohio 2008) ("typicality often ensues when numerous claims are based on a defendant's routine or standardized practice. If plaintiffs meet these requirements, factual distinctions between named and unnamed class members do not preclude typicality").

Fraud is the common question applicable to all class members. The allegedly fraudulent nature of Defendants' conduct and the illegal methods they allegedly used to accomplish the goals of the scheme are common contentions capable of class-wide resolution.

The named Plaintiffs' claims are also typical of the class members. They arise out of Agreements with uniform terms across class members and out of a uniform course of conduct described above. Plaintiffs' claims are based on the same practices and legal theories applicable to all owner-operators

The Court finds that Plaintiffs satisfy the commonality and typicality requirements.

### iii.   Adequacy of Representation

#### a. Adequacy of Class Representatives

Rule 23(a)(4) requires the representative parties be part of the class and share the same interests and injuries as the class members. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012). "The named plaintiffs must have common interests with unnamed members of the class and must be able to rigorously prosecute the interests of the class through qualified counsel." *Woodall v. Wayne Cnty.*, No. 20-1705, 2021 U.S. App. LEXIS 34149, at *11 (6th Cir. 2021) (citing *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)).

"Adequacy is twofold: [(1)] the proposed class representatives must have an interest in vigorously pursuing the claims of the class[, and (2)] [they] must have no interests antagonistic to the interests of other class members." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011).

Defendants do not point to any indicators of potential intra-class conflicts or antagonism between Plaintiffs' claims and those of the proposed class members and none have been revealed by the Court review of the facts alleged.

All Plaintiffs and proposed class members signed Agreements with Defendants and seek recovery for damages emanating from Defendants allegedly fraudulent conduct that occurred between 2011 and 2015. Additionally, Plaintiffs have remained committed to exercising good faith and sound judgment in prosecuting this case since 2019. They have dedicated significant time sitting for depositions, responding to discovery requests, and reviewing documentary discovery while retaining and working with class counsel.

As such, Rule 23(a)(4)'s requirement is satisfied with respect to the class representatives. *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006) (*citing Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625–27 (1997)).

### b. Adequacy of Class Counsel

Adequacy of representation turns in part on "the competency of class counsel" and in part on the absence of "conflicts of interest." *UAW v. GMC*, 497 F.3d 615, 626 (6th Cir.2007); *see* Fed. R. Civ. P. 23(g)(1)(C).

In appointing class counsel, the court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1).

Plaintiffs appoint Bruce Miller of Miller Cohen P.L.C to serve as class counsel. Mr. Miller filed an affidavit that attests to his extensive qualifications to serve as class counsel.

Mr. Miller is an accomplished attorney who has been practicing law in Michigan and around the country since 1954. He has extensive expertise in labor and employment law and class action litigation. Mr. Miller has tried multiple cases with complex facts and legal issues. One of his cases took 12 years to litigated and many of his cases resulted in large recoveries for his clients. Mr. Miller has declared the commitment of his entire firm to support the prosecution of Plaintiffs' claims.

The Court has no doubt that Mr. Miller will fairly and adequately represent the class as required by Rule 23(a) and (g). Mr. Miller has vigorously pursued this action from the beginning and the Court believes he will continue to do so. Accordingly, the Court finds that Mr. Miller and his firm, Miller Cohen, P.L.C., are qualified to serve as class counsel under Rule 23(a)(4) and Rule 23(g).

Plaintiffs have successfully established the existence of the Rule 23(a) prerequisites. Next, the Court considers whether the class meets the any of the requirements of Rule 23(b).

### B. Rule 23(b)

Plaintiffs must also show that the putative class satisfies at least one of Rule 23(b)'s categories. Plaintiffs seeks certification under Rule 23(b)(1)-(3). However, Defendants argue that Plaintiffs waived their right to seek class certification. The Court will address this argument first.

### 1. Defendants' Waiver Argument

Defendants say that class allegations pertaining to Rule 23(b)(3) should be stricken—pursuant to Rule 23(d)(1)(D) and *Pilgrim v. Universal Health Card, LLC*., 660 F.3d 943 (6th Cir. 2011)—because Plaintiffs waived that argument.

It is true that the text of Plaintiffs' motion requests certification under 23(b)(1) and (2), with no mention of 23(b)(3). However, the text of Plaintiffs' brief in support of their motion requests certification under 23(b)(3), although most of the argument

-16-

in the brief focuses on 23(b)(1) and (b)(2). see [ECF No. 42, PageID.117]. Pursuant to its discretion and obligation to conduct a rigorous analysis, the Court ordered the parties to file supplemental briefing on the Rule 23(b)(3) issue.

Contrary to Defendants' argument, neither Rule 23(d)(1)(D) nor *Pilgrim* relate to their waiver argument. Rule 23(d)(1)(D) provides that the Court may issue orders that require the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly. *Pilgrim* deals with a motion to strike class allegations pertaining to legal issues over which the Court did not have subject matter jurisdiction. *Pilgrim*, 660 F.3d at 945.

Defendants cite no authority showing that arguments raised in a brief in support of a motion—but not in the motion itself—are waived. Accordingly, the Court will not strike Plaintiffs' class allegations and will address whether the putative class satisfies Rule 23(b)(1)(A), 23(b)(2), or 23(b)(3).

### 2. Rule 23(b)(1)(A)

Rule 23(b)(1)(A) permits class certification where separate actions "would create a risk of … inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."

Under this rule, "the felt necessity for a class action is greatest when the courts are called upon to [alter] the status quo in circumstances [where] a large number of

persons are in a position to call on a single person to alter the status quo, or to complain if it is altered, and the possibility exists that [the] actor might be called upon to act in inconsistent ways." *See* Advisory Committee's 1966 Notes on Fed. R. Civ. Pro. 23 (b)(1)(A) (internal quotations omitted).

The district court is within its discretion to "certify a damages class under (b)(1)(A)," but in doing so, it must address "due process concerns" in a meaningful way. *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 281 (6th Cir. 2018). In the context of a class action predominantly for money damages the Supreme Court has held that absence of notice and opt out mechanisms violate due process. *Dukes*, 564 U.S. at 363 (*citing Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S. Ct. 2965, 86 L.Ed.2d 628 (1985)).

"Rule 23(b)(1)(A) [applies] in cases where the party is obliged by law to treat the members of the class alike ([such as] a utility acting toward customers, a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)." *See Clemons*, 890 F.3d at 281 (*quoting Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (internal quotations omitted).

Plaintiffs' class action is not certifiable under Rule 23(b)(1)(A) because they cite no law or obligation requiring Defendants to treat the proposed class members equally.

Relying on *Reese v. CNH America, LLC*, 227 F.R.D. 483 (E.D. Mich. 2005) and *Sloan v. BorgWarner, Inc.*, 263 F.R.D. 470 (E.D. Mich. 2009), Plaintiffs argue class certification under Rule 23(b)(1) is warranted, otherwise "inconsistent or varying adjudications" may result.  [ECF No. 42, PageID.1171].

Both *Reese* and *Sloan* concerned lawsuits brought under statutes that imposed obligations on the defendants to treat the proposed class similarly.  *See, e.g.*, *Reese*, 227 F.R.D. at 485 (bringing claims under the Labor-Management Relations Act ("LMRA") and Employee Retirement Income Security Act ("ERISA")); *Sloan*, 263 F.R.D. at 472 (same).  Plaintiffs' claims are distinct.  Unlike the LMRA and ERISA, the RICO statute imposes no obligations on Defendants to treat the proposed class equally.

The concern under 23(b)(1)(A) is not primarily that different lawsuits would yield different results for different plaintiffs; rather, the concern is that different judicial outcomes might impose conflicting obligations on the same defendant or group of defendants. *see Snead v. CoreCivic of Tennessee, LLC*, 2018 WL 3157283, at *14 (M.D. Tenn. June 27, 2018).

Defendants' liability depends both on their Agreements with owner-operators, and their compensation. If Defendants are found liable to the named Plaintiffs, similarly situated owner-operators could still potentially secure relief for their claims in separate lawsuits.

A court ruling against owner-operators who are parties to different contracts with Defendants does not foreclose relief to owner-operators with Agreements at issue in this case. Thus, the class is not certifiable under Rule 23(b)(1)(A). *See Pipefitters Local 636 Ins. Fund*, 654 F.3d at 633 ("Certification is not appropriate simply because some plaintiffs may be successful in their suits against a defendant while others may not").

In *Pipefitters*, the Sixth Circuit held that a class action alleging breach of fiduciary duty was not maintainable on ground that prosecuting separate actions would create risk of inconsistent or varying adjudications that could establish incompatible standards of conduct for party opposing class. *Id.* at 633. The Court reasoned that "because the threshold question of [defendant's] fiduciary status depends on the [contract] and funding arrangements between each class member and [defendant], there is no prospect that individual adjudications would subject [defendant] to conflicting affirmative duties." *Id.*

Similar to *Pipefitters*, the threshold question here pertains to fraud and breach of contract allegedly committed with respect to separate contracts between individual owner-operators and RSP. The putative class does not satisfy Rule 23(b)(1)(A).

### 3.  Rule 23(b)(2)

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

"The key to the (b)(2) class is . . . the notion that the conduct . . . can be enjoined or declared unlawful only as to all of the class members or as to none of them."  *Dukes*, 564 U.S. at 360 (citation omitted).  The Supreme Court in *Dukes* unanimously held that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages," unless money damages are incidental to equitable relief.  *Id.* at 360–61.

The class is not certifiable under Rule 23(b)(2) because no injunctive relief is at issue and the suit only seeks monetary damages as a remedy.  *See Dukes*, 564 U.S. at 360.  Plaintiffs also state that Defendants' conduct ceased on December 31, 2014, leaving no wrongful conduct left to enjoin.  [ECF No. 48-1, PageID.1405–1406].

The class does not satisfy Rule 23(b)(2).

### 4.  Rule 23 (b)(3)

Certification is appropriate under Rule 23(b)(3) when the court finds that: (1) common questions of law or fact predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Plaintiffs need not prove that every element can be established by class wide proof. *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc*., 863 F.3d 460, 468 (6th Cir. 2017), *as corrected on denial of reh'g en banc* (Sept. 1, 2017). But the key is to "identify[ ] the substantive issues that will control the outcome," and "consider how a trial on the merits would be conducted if a class were certified." *Id*.

Defendants argue trial on a class-wide basis will necessarily entail highly individualized factual determinations in relation to each class member, will be

unmanageable, and is not the superior method of adjudication. [ECF No. 80, PageID.2876].

Defendants say a trial will also entail consideration of evidence pertaining to its defenses in relation to each individual class member. [ECF No. 80, PageID.2883]. These defenses include: (1) lack of standing and Plaintiff Biclea's fraudulent concealment of this action in his bankruptcy proceeding; (2) the applicable statute of limitations; (3) the absence of any alleged fraudulent concealment; (4) the absence of conduct indicative of mail fraud; (5) waiver and estoppel since each Contractor failed to timely request, review, and assert claims derived from shipping and other documents pertaining to its transport of freight on behalf of any Defendant or its customers; (6) whether there was an effective termination or modification of the Contractor's agreement with RSP Express which allow RSP to pay any putative class member an amount less than 70-80% of the gross revenue paid by the third part for transport of its freight; and (7) the absence of conduct indicative of statutory and common law conversion. [Id].

According to Defendants, each of these considerations will require an inquiry into day-by-day shipping transactions, loads, and oral communications between RSP dispatchers and individual Plaintiffs. [Id]. Defendants believe these transactions and communications could pertain to at least "400,000 separate events." [Id]. Defendants

say that common questions of law or fact do not predominate over these individualized considerations.

Defendants are incorrect, all class members share the same legal and factual questions: whether Defendants defrauded owner-operators who signed Agreements with RSP, whether Defendants breached those agreements and converted contract proceeds by paying the owner-operators a percentage of a fraudulent amount in gross revenue. [ECF No. 42, PageID.1165]. While individualized issues exist, these common questions predominate over individualized determinations because Defendants allegedly acted uniformly with respect to all owner-operators.

For example, trial on a class wide basis will not require inquiry into oral communications between all class members and Defendants because they all signed agreements with uniform terms that were not orally modifiable. Without the potential for oral modification any conversations that took place do not raise individual issues that predominate over the common contention: Defendants paid the owner-operators a percentage of a fraudulent amount in gross revenue, breached an agreement shared amongst all class members, and converted funds. Defendants' speculation that some contracts were modified does not preclude class certifications or defeat predominance here. Ms. Marinescu testified that the owner-operators "could refuse or accept," but they "cannot" negotiate a higher rate. [ECF No. 78, PageID.2835].

Further, Defendants mailed all owner-operators in the putative class Driver Settlement statements through the U.S. mail showing a fraudulent amount in gross revenue paid by third-party shippers. Defendants also paid Plaintiffs 70-80% of the fraudulent amount, and Defendants engaged in fraudulent concealment with respect to all class members by failing to disclose the real amount in gross revenue. [Id]. Finally, all class members were the parties in interest who contracted with Defendants, so any argument by Defendants for lack of standing could be resolved using the same proofs and legal arguments.

The only individualized determination cited by defendants that cannot be resolved by a view of Defendants conduct in relation to all of the class members is their argument regarding Plaintiff Biclea's fraudulent concealment of this action in his bankruptcy proceeding. When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160- 161 (1982).

To the extent that Defendants claim an affirmative defense to Biclea's claims, it can be tried separately and does not predominate over the common factual and legal issues in this case.

Defendants cite *Comcast Corp. v. Behrend*, 569 U.S. 27, 28 (2013). In that case, the Supreme Court reversed a decision to certify a class of subscribers who asserted anti-trust claims after concluding that the plaintiff's had failed to prove there was a method to determine legally available damages on a class-wide basis. *Id*.

Unlike *Comcast Corp*, here any difference in damages between class members can be resolved by a simple view either (1) the individual contracts or (2) the Dr. Dispatch documents. The 2012-2014 Driver Payroll History and Fleet Revenue Reports from Dr. Dispatch—a computer program that Defendants used to record both accounts receivable and payroll—show that the invoice price (the actual gross revenue) significantly exceeded the revenue price on the Driver Payroll Records. Allegedly, 2012 owner-operators were shorted a total of $812,723.80; 2013 owner-operators were shorted $1,180,044.17; and 2014 owner-operators were shorted $1,876,205.68. Records for years 2011 and 2015 are purportedly still subject to discovery. Plaintiffs seek to recover these contract proceeds.

The factual and legal issues of Defendants' liability do not differ dramatically from one plaintiff to the next. No matter how individualized the issues of damages may be, "these issues may be reserved for individual treatment with the question of liability tried as a class action." *In re Am. Med. Sys., Inc*., 75 F.3d 1069, 1084 (6th Cir. 1996). The mere fact that "questions peculiar to each individual member of the

-26-

class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Id*.

The individualized issues do not predominate over the common issues and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. It is a waste of the Court's resources to separately litigate claims that all pertain the same scheme and uniform course of conduct. And the amount of individualized inquires can be effectively minimized. Because of Defendants' alleged fraudulent concealment, many class members may not discover that they have a cause of action until they learn about this lawsuit.

The Court finds that the proposed class satisfies Fed. R. Civ. P. 23(b)(3).

Plaintiff's Motion for Class Certification is **GRANTED**.

## V. CONCLUSION

For the reasons discussed herein, the Court **GRANTS** Plaintiffs' Motion to Certify Class [ECF No. 42].

Plaintiffs must submit to the Court a plan and description of how it will provide notice to all class members in compliance with Fed. R. Civ. P. 23(c)(2)(B) and the due process clause of the United States Constitution. This plan is due by **February 28, 2023**.

**IT IS SO ORDERED.**

Dated:  January 27, 2023                          /s/Gershwin A. Drain
                                                 GERSHWIN A. DRAIN
                                                 United States District Judge


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 27, 2023, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Deputy Clerk