UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIRELA USELMANN, *et al.*,

                         Plaintiffs,

                                     Case No. 19-13652

v.                               U.S. DISTRICT COURT JUDGE
                                     GERSHWIN A. DRAIN

RAZVAN POP, *et al.*,

                         Defendants.

_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#147] AND GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [#148]

### I.    INTRODUCTION

      Presently before the Court is Defendants' Motion for Summary Judgment and Plaintiffs' Motion for Summary Judgment, both of which were filed on March 27, 2025. These Motions address the sole remaining issue in this case: whether Plaintiffs are entitled to 80 percent of the gross revenues received by Defendant RSP Express Inc. ("RSP") from its customers for freight transported to or from Mexico or Canada, free from deductions related to such cross-border shipments. The Motions are fully briefed. Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the disposition of this matter. Accordingly, the Court will

resolve the Motions on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Court DENIES Defendants' Motion for Summary Judgment and GRANTS Plaintiffs' Motion for Summary Judgment.

## II.   **BACKGROUND**

This is a class action civil RICO case. Plaintiffs are truck drivers and owner-operators, and Defendant RSP is an over-the-road freight company owned and operated by Defendants Razvan Pop and Maria Pop. Plaintiffs contracted with RSP to transport freight on RSP's behalf to various locations across the country. Some of this freight originated in or was delivered to Mexico or Canada. Plaintiffs transported this freight within the United States, while third-party carriers were responsible for transporting it to and from these international endpoints.

RSP's business relationship with Plaintiffs was governed by a written agreement between RSP and each individual class member ("the Agreement"). Section Two of the Agreement provides that "Carrier shall pay to Contractor a sum equal to 80 (%) percent of the gross revenues (after allowable deductions as provided herein) received by Carrier from Carrier's customers for the transportation of any freight by Contractor." ECF No. 149-1, PageID.4103. RSP is the "Carrier," and each class member is a "Contractor." The Agreement also contains an integration clause.

In their First Amended Class Action Complaint, Plaintiffs alleged two civil RICO claims under 18 U.S.C. § 1964(c) (Counts I and II), breach of contract (Count

III), unjust enrichment/quantum meruit (Count IV), promissory estoppel (Count V), and conversion (Count VI). On March 18, 2022, Defendants moved for summary judgment on all claims. The Court granted the motion with respect to Count II but denied it as to the remaining counts. Thereafter, Plaintiffs moved for summary judgment on Count I, which the Court granted. The parties then voluntarily dismissed Counts III, IV, V, and VI with prejudice and without costs or attorneys' fees to any of the parties, as well as waived their right to a jury trial.

The sole triable issue remaining in this case is a determination of the damages owed to Plaintiffs for Count I. The parties have indicated to the Court that they are largely in agreement on this issue. However, they dispute whether the Agreement entitles Plaintiffs to 80 percent of the gross revenues RSP received for freight that originated in or was delivered to Mexico or Canada, and whether RSP may deduct international transport costs from those revenues.

In lieu of a trial, the Court permitted the parties to resolve this issue through motions for summary judgment, which were filed on March 27, 2025 and are presently before the Court. Plaintiffs argue the Agreement unambiguously entitles them to 80 percent of the gross revenues for all freight they transported, irrespective of whether the freight was ultimately transported to or from Mexico or Canada by a third-party carrier. Plaintiffs further claim the Agreement does not permit RSP to deduct the costs associated with transporting this freight to and from these

3

international endpoints from the gross revenues. Defendants, on the other hand, argue that because third-party carriers ultimately transported the freight to and from Mexico or Canada, this freight was not delivered "*by* Contractor," as required under the Agreement for Plaintiffs to receive 80 percent of the gross revenues.

### III. <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if its resolution will affect the outcome of the lawsuit." *Martingale LLC v. City of Louisville*, 361 F.3d 297, 301 (6th Cir. 2004) (citation omitted). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (citation omitted). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Id.* Furthermore, "[d]istrict courts may in their discretion permit renewed or successive motions for summary judgment." *Lexicon,*

*Inc. v. Safeco Ins. Co. of Am.*, 436 F.3d 662, 670 n.6 (6th Cir. 2006) (citation omitted).

## IV.   <u>ANALYSIS</u>

The issue before the Court is purely a matter of contract interpretation, and as such, state law applies. It is undisputed that Michigan law governs the Court's interpretation of the Agreement. Michigan law provides that a court's interpretation of a contract must "give effect to the parties' intention at the time they entered into the contract." *Innovation Ventures v. Liquid Mfg.*, 885 N.W.2d 861, 870 (Mich. 2016) (citation omitted). "We determine the parties' intent by interpreting the language of the contract according to its plain and ordinary meaning." *Bank of Am. v. First Am. Title Ins. Co.*, 878 N.W.2d 816, 821 (Mich. 2016). A court is to read the "contract[] as a whole, giving harmonious effect, if possible, to each word and phrase." *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 781 n.11 (Mich. 2003) (citing *Singer v. Goff*, 334 Mich. 163, 168 (Mich. 1952)). "The common usage of a nonlegal term is to be found in a lay dictionary." *Twichel v. MIC General Ins. Corp.*, 676 N.W.2d 616, 623 (Mich. 2003). "Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of [the] written agreement." *Universal Underwriters Ins. Co. v. Kneeland*, 628 N.W.2d 491, 494 (Mich. 2001). "A provision is not ambiguous just because 'reasonable minds can differ regarding' the meaning of the provision." *People v. Gardner*, 753 N.W.2d 78,

5

85 n.12 (Mich. 2008) (citation omitted). Rather, "a contractual term is ambiguous on its face only if it is equally susceptible to more than a single meaning." *Barton-Spencer v. Farm Bureau Life Ins. Co. of Mich.*, 892 N.W.2d 794, 798 (Mich. 2017) (citation omitted).

"When two parties have entered into a written contract and have expressed their intention that the writing constitute the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." *Mich. Nat'l Bank v. Laskowski*, 580 N.W.2d 8, 10 (Mich. Ct. App. 1998) (citation omitted). Notwithstanding, "an integrated writing 'may be explained or supplemented by operative usages of trade, by the course of dealing between the parties, and by the course of performance of the agreement.'" *CMC Telecom, Inc. v. Neyer Tiseo & Hindo, Ltd.*, No. 315338, 2014 WL 4723592, at *3 (Mich. Ct. App. Sept. 23, 2014) (quoting Restatement (Second) of Contracts, §§ 34, 209 cmt. a)). Such evidence "is generally considered highly persuasive evidence of proper contract interpretation when introduced against the party so performing." *Id.* (citing *Schroeder v. Terra Energy, Ltd.*, 223 Mich. App. 176, 191 (Mich. Ct. App. 1997)).

Here, the Agreement provides that RSP shall pay Plaintiffs "a sum equal to 80 (%) percent of the gross revenues (after allowable deductions as provided herein) received by [RSP] from [RSP's] customers for the transportation of any freight by

6

[Plaintiffs]." ECF No. 149-1, PageID.4103. "Gross" is defined by Merriam-Webster's Dictionary as "consisting of an overall total exclusive of deductions."[1] While the Agreement permits RSP to deduct certain costs from the gross revenues, it plainly limits such deductions to those expressly provided for therein. The Agreement does not authorize deductions for international transport costs, nor does it contemplate deductions for the costs associated with compensating third-party carriers who may play a role in transporting freight.

Furthermore, "any" is defined by Merriam-Webster's Dictionary as "unmeasured or unlimited in amount, number, or extent."[2] Thus, by its plain terms, "any freight by Contractor" encompasses *any and all* freight transported by Plaintiffs, irrespective of whether a third-party carrier handled transporting the freight to or from Mexico or Canada. The Agreement does not otherwise exclude international loads from the scope of this provision, nor does it carve out an exception for loads involving third-party carriers. Furthermore, the Agreement provides no alternative mechanism for Plaintiffs to receive compensation for their role in transporting such loads.

This reading of the Agreement is reinforced by evidence of the parties' course of performance. RSP regularly provided Plaintiffs with Driver Settlement

---

[1] https://www.merriam-webster.com/dictionary/gross.
[2] https://www.merriam-webster.com/dictionary/any.

7

Statements, which itemized the gross revenue it purportedly received for each load and the corresponding payment to the contractor. The Settlement Statements before the Court demonstrate that Plaintiffs were consistently paid 80 percent of the gross revenues for *all* freight they transported, including those originating from or ultimately delivered to Mexico and Canada. The Statements reflect no adjustments or deductions based on the international nature of the transport or based on a third-party carrier's involvement in transporting the freight.

Defendants appear to claim that the Settlement Statements do not accurately reflect the parties' course of performance, arguing that the costs paid to third-party carriers were "not 'deductions,' but instead were not included in and were subtracted from the reported gross revenues[.]" ECF No. 149, PageID.4097. This argument is not well taken. The Court found Defendants liable for Plaintiffs' civil RICO claim, in part because they habitually mailed fraudulent weekly Settlement Statements to more than one hundred owner-operators/drivers. Therein, RSP underreported the gross revenues it actually received from customers, resulting in significant underpayment to Plaintiffs. That Defendants deducted international transport costs from the gross revenues it reported in the Settlement Statements, without Plaintiffs' knowledge or assent, does not support interpreting the Agreement in the manner urged by Defendants. Rather, it further illustrates the fraudulent nature of Defendants' conduct.

Accordingly, the Court concludes that there is no dispute of material fact as to the damages Plaintiffs are entitled to recover for freight that originated in or was ultimately delivered to Mexico or Canada. The Agreement unambiguously entitles Plaintiffs to 80 percent of the gross revenues Defendants received for such loads, less any expressly authorized deductions. The Agreement does not permit deductions for international transport costs or costs to third-party carriers that may have played a role in transporting the freight. Therefore, Defendants' Motion for Summary Judgment is DENIED and Plaintiffs' Motion for Summary Judgment is GRANTED.

## V.    **CONCLUSION**

Based on the foregoing, Defendants' Motion for Summary Judgment [#147] is DENIED and Plaintiffs' Motion for Summary Judgment [#148] is GRANTED.

SO ORDERED.

Dated: April 30, 2025                    /s/Gershwin A. Drain
                                         GERSHWIN A. DRAIN
                                         United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 30, 2025, by electronic and/or ordinary mail.
/s/ Marlena Williams
Case Manager

9